IMMIGRATION AND NATURALIZATION SERVICE
*v.* MIRANDA

No. 82–29.   Decided November 8, 1982

PER CURIAM.

Respondent Horacio Miranda, a citizen of the Philippines, entered the United States in 1971 on a temporary visitor's

visa. After his visa expired, he stayed in this country, eventually marrying Linda Milligan, a citizen of the United States, on May 26, 1976. Shortly thereafter, Milligan filed a visa petition with the Immigration and Naturalization Service (INS) on respondent's behalf. She requested that he be granted an immigrant visa as her spouse.[1] Respondent simultaneously filed an application requesting the INS to adjust his status to that of a permanent resident alien. Section 245(a) of the Immigration and Nationality Act of 1952 conditions the granting of permanent resident status to an alien on the immediate availability of an immigrant visa.[2] Milligan's petition, if approved, would have satisfied this condition.

The INS did not act on either Milligan's petition or respondent's application for 18 months. Following the breakup of her marriage with respondent, Milligan withdrew her petition in December 1977. At that point, the INS denied respondent's application for permanent residence because he had not shown that an immigrant visa was immediately available to him. The INS also issued an order to show cause why he should not be deported.

At a deportation hearing, respondent conceded his deportability but renewed his application for permanent resident status because of his marriage to Milligan. Although the marriage had ended, he claimed that a previous marriage was sufficient to support his application. The Immigration Judge rejected this claim, concluding that the immediate availa-

---

[1] Section 201(b) of the Immigration and Nationality Act of 1952 provides for the admission of immigrants who are immediate relatives of United States citizens. 66 Stat. 175, as amended, 8 U. S. C. § 1151(b).

[2] Section 245(a) provides that the status of an alien who was admitted into the United States "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 66 Stat. 217, as amended, 8 U. S. C. § 1255(a).

bility of an immigrant visa was a necessary condition to respondent's application. Since Milligan had withdrawn her petition for an immigrant visa before the INS had acted on it, respondent was ineligible for permanent resident status.

Respondent appealed the decision to the Board of Immigration Appeals. For the first time, he raised the claim that the INS was estopped from denying his application because of its "unreasonable delay." He argued that the "failure to act was not only unreasonable, unfair and unjust but also an abuse of governmental process if the delay was deliberate." Record 44. The Board rejected respondent's claim. It found "no evidence of any 'affirmative misconduct'" and no basis for an equitable estoppel. *Id.*, at 4.

Respondent sought review of the Board's decision in the Court of Appeals for the Ninth Circuit. The Court of Appeals reversed, holding that "[t]he unexplained failure of the INS to act on the visa petition for an eighteen-month period prior to the petitioner's withdrawal . . . was affirmative misconduct by the INS." *Miranda* v. *INS*, 638 F. 2d 83, 84 (1980). We granted certiorari, vacated the judgment of the Court of Appeals, and remanded the case for further consideration in light of *Schweiker* v. *Hansen*, 450 U. S. 785 (1981). 454 U. S. 808 (1981).

On remand, the Court of Appeals adhered to its earlier decision. 673 F. 2d 1105 (1982) *(per curiam)*. It found *Hansen* inapplicable for three reasons. First, the Government's conduct in *Hansen* had not risen to the level of affirmative misconduct. In this case, however, affirmative misconduct was established by the INS's unexplained delay in processing respondent's application. Second, although the private party in *Hansen* subsequently had been able to correct the Government's error, the INS's error here inflicted irrevocable harm on respondent. Finally, unlike the private party in *Hansen* who sought to recover from the public treasury, respondent was seeking only to become a permanent resident—a result that would entail no burden on the public

fisc.   The Court of Appeals determined that "the Supreme Court's conclusion that the government was not estopped in *Hansen* neither compels nor suggests the same conclusion here."   673 F. 2d, at 1106.

In *Hansen*, we did not consider whether estoppel will lie against the Government when there is evidence of affirmative misconduct.   We found that a Government official's misstatement to an applicant for federal insurance benefits, conceded to be less than affirmative misconduct, did not justify allowing the applicant to collect retroactive benefits from the public treasury.   See 450 U. S., at 788–789.   Although *Hansen* involved estoppel in the context of a claim against the public treasury, we observed that "[i]n two cases involving denial of citizenship, the Court has declined to decide whether even 'affirmative misconduct' would estop the Government from denying citizenship, for in neither case was 'affirmative misconduct' involved."   *Id.*, at 788.

The Court of Appeals thus correctly considered whether, as an initial matter, there was a showing of affirmative misconduct.   See *INS* v. *Hibi*, 414 U. S. 5, 8–9 (1973) *(per curiam); Montana* v. *Kennedy*, 366 U. S. 308, 314–315 (1961).   *Hibi* and *Montana* indicate, however, that the Court of Appeals erred in determining that the evidence in this case established affirmative misconduct.   In *Montana*, a Government official had incorrectly informed the petitioner's mother that she was unable to return to the United States because she was pregnant.   The Court found that the official's misstatement "falls far short of misconduct such as might prevent the United States from relying on petitioner's foreign birth" as a basis for denying him citizenship.   366 U. S., at 314–315.   In *Hibi*, Congress had exempted aliens serving in the United States Armed Forces from certain requirements normally imposed on persons seeking naturalization.   We found that neither the Government's failure to publicize fully the rights accorded by Congress nor its failure to make an

authorized naturalization representative available to aliens serving outside of the United States estopped the Government from rejecting respondent's untimely application for naturalization. See 414 U. S., at 8–9.

Unlike *Montana* and *Hibi*, where the Government's error was clear, the evidence that the Government failed to fulfill its duty in this case is at best questionable. The only indication of negligence is the length of time that the INS took to process respondent's application. Although the time was indeed long, we cannot say in the absence of evidence to the contrary that the delay was unwarranted.[3] Cf. *Citizens to Preserve Overton Park, Inc.* v. *Volpe,* 401 U. S. 402, 415 (1971) (presumption of regularity supports official act of public officer); *United States* v. *Chemical Foundation, Inc.,* 272 U. S. 1, 14–15 (1926) (same). Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable.[4] Even if the INS arguably was negligent in not acting more expeditiously, its conduct was not significantly different from that in *Montana* and *Hibi.* Nor is the harm to respondent different. *Montana* and *Hibi* make clear that neither the Government's conduct nor the harm to the respondent is sufficient to estop the Government from enforcing the conditions imposed by Congress for residency in this country.

---

[3] The INS has maintained consistently that the 18-month delay was reasonable because of the need to investigate the validity of respondent's marriage. Because the issue of estoppel was raised initially on appeal, the parties were unable to develop any factual record on the issue.

[4] In 1976, the year in which Milligan filed her petition on behalf of respondent, some 206,319 immediate-relative petitions were filed. See INS Ann. Rep. 11 (1976). The Service has noted: "In dealing with these petitions, an inordinate amount of fraud, particularly in relation to claimed marriages, has been uncovered. . . . For a fee, partners are provided and marriages contracted to establish eligibility under the statutes for visa issuance benefits." *Ibid.* We cannot discount the need for careful investigation by the INS that these petitions demand.

The final distinction drawn by the Court of Appeals between this case and *Hansen* is unpersuasive. It is true that *Hansen* relied on a line of cases involving claims against the public treasury. But there was no indication that the Government would be estopped in the absence of the potential burden on the fisc. An increasingly important interest, implicating matters of broad public concern, is involved in cases of this kind. Enforcing the immigration laws, and the conditions for residency in this country, is becoming more difficult. See n. 4, *supra.* Moreover, the INS is the agency primarily charged by Congress to implement the public policy underlying these laws. See, *e. g., INS* v. *Jong Ha Wang,* 450 U. S. 139, 144–145 (1981) *(per curiam); Hibi, supra,* at 8. Appropriate deference must be accorded its decisions.

This case does not require us to reach the question we reserved in *Hibi,* whether affirmative misconduct in a particular case would estop the Government from enforcing the immigration laws. Proof only that the Government failed to process promptly an application falls far short of establishing such conduct. Accordingly, we grant the petition for certiorari and reverse the judgment of the Court of Appeals.

*It is so ordered.*

JUSTICE MARSHALL, dissenting.

I dissent from the Court's summary reversal of the Court of Appeals. The Court concedes that the INS's 18-month delay in processing respondent's application "was indeed long," but concludes that it "cannot say in the absence of evidence to the contrary that the delay was unwarranted." *Ante,* at 18. The Court relies on a presumption of regularity which it says attends the official acts of public officers. *Ibid.* In view of the unusual delay in the processing of respondent's application, I do not agree that this case should be summarily disposed of on the basis of this convenient presumption. If the Court believes, as I do not, that this case raises an issue of sufficient importance to justify the exercise of our certio-

rari jurisdiction, and if the Court also believes that oral argument should be dispensed with, I would at least notify the parties that the Court is considering a summary disposition, so that they may have an opportunity to submit briefs on the merits.