**In the Matter of the Application of Turnier ST. FLEUR (A 26 092 896), Petitioner,**

v.

**Charles C. SAVA, District Director, U.S. Immigration & Naturalization Service, New York, New York, Respondent.**

No. 85 Civ. 4229–CSH.

United States District Court, S.D. New York.

Aug. 2, 1985.

Claude Henry Kleefield, New York City, for petitioner.

Rudolph W. Giuliani, U.S. Atty., New York City, for respondent; Jorge Guttlein, Sp. Asst. U.S. Atty., of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Petitioner Turnier St. Fleur seeks a writ of habeas corpus on the ground that the decision of respondent Charles Sava, District Director of the United States Immigration and Naturalization Service (the "INS" or the "Service"), denying petitioner parole pursuant to Section 212(d)(5) of the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1182(d)(5), was arbitrary, capricious and an abuse of discretion. St. Fleur, an unadmitted Haitian alien, was detained by the INS on May 22, 1985. He seeks release from detention pending adjudication by the Service of his application for political asylum and for a visa based upon his marriage to a United States citizen.

The matter is before the Court on an Order to Show Cause initially returnable July 2, 1985. After repeated adjournments at the joint request of counsel, oral argument was heard on petitioner's application on July 19, 1985. Decision on the petition was reserved pending submission by petitioner's counsel of further briefs as described *infra.*

The INS administrative record reveals that St. Fleur first arrived in the United States on August 26, 1981. He attempted to enter the country by presenting a fraudulent passport to an immigration inspector at Miami International Airport in Miami, Florida, and, as a result, was detained by the INS pursuant to Section 235(b) of the Act. While being held at the INS Krome North Service Processing Center ("Krome") in Miami for deferred inspection and exclusion proceedings, St. Fleur absconded.

Petitioner states that he then came to New York City where he met Edna Denise Watson, a United States citizen. St. Fleur and Watson were married in Brooklyn, New York on March 7, 1983. A daughter, Sadie Teseane Lawanda St. Fleur, was born of that marriage on October 16, 1983.

On February 10, 1984, Edna St. Fleur filed an immigrant visa petition (the "I–130 petition") with the INS on her husband's behalf. No decision has yet been made on the I–130 petition.

On the date that petitioner was apprehended and detained, he filed an application for political asylum (INS Form 559) which is also pending decision. In that application, petitioner alleged that he was beaten, tortured, and imprisoned by the Haitian secret police, ostensibly because his employer had been involved in underground political activities against the Haitian government. Petitioner claims that after his father paid bribe money to obtain his release, he fled the country.

He explains that he had to use a fraudulent passport to seek entry to the United States because as a political opponent of the Haitian government, he could not obtain a valid one. He also contends that he did not "escape" from the Krome detention center; rather he simply walked out of the facility when the doors were opened by demonstrators. He further contends that ten or fifteen days later, the INS released a large group of Haitian detainees and he asserts that he would have been part of that group.

Petitioner has properly invoked the habeas jurisdiction of this Court to review the parole decision of the District Director of the INS. *Bertrand v. Sava*, 684 F.2d 204, 210 (2d Cir.1982); *Abu Laban v. Sava*, 564 F.Supp. 30, 31 (S.D.N.Y.1982). But the scope of judicial review of that decision is necessarily narrow: petitioner must prove that the District Director either failed to exercise any discretion at all in denying parole, or that he exercised his discretion irrationally or in bad faith. *Bertrand*, 684 F.2d at 213.

Petitioner concedes that Benjamin Perlitsh, Deputy Assistant District Director of the INS, to whom respondent Sava delegated the authority and discretion to make the parole decision, did exercise that discretion in denying petitioner parole. However, St. Fleur contends that Perlitsh's decision was irrational. I cannot agree.

By letter dated July 2, 1985, Perlitsh informed petitioner's counsel of the denial of St. Fleur's request for parole and the reasons for that denial. Perlitsh noted that in 1981 when St. Fleur first sought admission to the United States, he had presented a Haitian passport bearing a fraudulent endorsement that he was a lawful permanent resident of this country. Perlitsh also noted that St. Fleur had absconded from the Krome detention center while being held by the INS for further proceedings. Perlitsh concluded: "In view of the means whereby Mr. St. Fleur sought to enter the United States and the fact he absconded from [INS] custody, he does not warrant the exercise of discretion favoring his parole. Your request is denied."

Petitioner argues that there were mitigating circumstances which justified his actions in 1981, thereby making it irrational for Perlitsh to base his denial of parole on those actions. The argument is unpersuasive.

While it may be true that petitioner could not obtain a valid passport in order to exit Haiti, he is not excused thereby from seeking to gain admission to the United States with a fraudulent passport. Upon arrival in Miami, petitioner could have explained his situation truthfully to the immigrations inspector and applied immediately for political asylum. Instead, he sought to gain entry deceitfully and waited four years to apply for political asylum. Under these circumstances, it cannot be said that it was irrational for Perlitsh to conclude that such behavior by petitioner failed to warrant the exercise of Perlitsh's discretion in favor of parole.

Equally meritless is petitioner's contention that he did not really "abscond" from the Krome detention center because he was "released" by demonstrators. It is clear that petitioner left the Krome facility without proper authorization and for four years thereafter failed to apprise the Service of his whereabouts. It matters not what fortuitous event permitted him to engage in such unlawful conduct. Furthermore, there is no evidence in the record to support the petitioner's speculation that he would have been released lawfully from custody a few weeks later.

The applicable INS regulations make it clear that even where the alien has close family relatives in the United States, parole will be appropriate only when there is no risk that the alien will abscond. These regulations provide that "[a]liens who have close family relatives in the United States ... who ... have filed, a visa petition on behalf of the detainee," 8 C.F.R. § 212.-5(a)(2)(iii), "generally come within the category of aliens for whom the granting of the parole exception would be 'strictly in the public interest,' *provided that* the aliens present neither a security risk nor a *risk of absconding.*" 8 C.F.R. § 212.-5(a)(2).

Perlitsh's finding that petitioner's previous escape from custody suggests a risk that petitioner would flee if paroled must be said to have a rational basis. Petitioner protests that his marriage and child guarantee his continued presence in the community, but petitioner left two other children and their mother in Haiti in 1981 when he first sought to enter the United States. On this record, the existence of petitioner's conjugal and paternal ties could rationally be said to fail to overcome the risk of future flight by petitioner.

Therefore, I conclude that respondent did not exercise his discretion irrationally in denying parole to petitioner.

At oral argument petitioner's counsel raised an alternative argument for the first time. He pointed out that the Service knew where St. Fleur was as early as February 10, 1984 when his wife filed the I-130 petition on his behalf, yet it failed to apprehend and detain petitioner for fifteen

(15) months thereafter. He contended that the Service should now be held estopped from denying petitioner parole because of this unreasonable delay in apprehending and detaining him. Counsel cited no authority in support of this argument, but requested time to brief the issue. Permission to put in reply papers addressing the point was granted and extended on consent until close of business yesterday. No such papers have been received. Nevertheless, the Court's own research indicates that the estoppel argument is also unavailing.

In *Immigration and Naturalization Service v. Miranda*, 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982), the wife of an alien filed a petition for an immigrant visa on his behalf on the ground that he was the spouse of a United States citizen. The alien himself simultaneously filed an application for adjustment of his status to that of a permanent resident alien. Eighteen months later, before the Service had acted on either application, the marriage ended and the wife withdrew her petition. The Service then denied the alien's application on the ground that the availability of an immigrant visa was a prerequisite for adjustment to permanent resident status; since the visa petition had been withdrawn, the alien was no longer eligible for permanent residency. The alien claimed that the unexplained 18-month delay by the Service in adjudicating the visa petition constituted affirmative misconduct by it sufficient to estop the Service from denying his permanent residency application. The Supreme Court, reversing a Ninth Circuit decision upholding petitioner's claim, *Miranda v. Immigration and Naturalization Service*, 673 F.2d 1105 (9th Cir.1982), held that the mere failure of the Service promptly to process the immigrant visa petition failed to rise to the level of affirmative misconduct by it. The Court stated:

> "The only indication of negligence is the length of time that the INS took to process respondent's application. Although the time was indeed long, we cannot say in the absence of evidence to the contrary that the delay was unwarranted. Cf. *Citizens to Preserve Overton Park,*

*Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (presumption of regularity supports official act of public officer); *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926) (same) ... [N]either the Government's conduct nor the harm to the respondent is sufficient to estop the Government from enforcing the conditions imposed by Congress for residency in this country."

459 U.S. at 18, 103 S.Ct. at 283 (footnote omitted).

The Court declined to reach the question whether a showing of "affirmative misconduct in a particular case would estop the Government from enforcing the immigration laws." *Id.* at 19, 103 S.Ct. at 284. But on the record before it, the Court held that "[p]roof only that the Government failed to process promptly an application falls far short of establishing ... [affirmative mis]conduct," *id.,* sufficient to raise the estoppel question.

■ I need not reach the question reserved by the Court in *Miranda* either, for the instant petitioner's allegation of mere delay in apprehending and detaining him fails to establish affirmative misconduct by the Service sufficient to raise the estoppel question.

Petitioner's application for a writ of habeas corpus is denied. Furthermore, the petition does not raise questions of substance upon which the Court of Appeals should rule. Accordingly, a certificate of probable cause, pursuant to Rule 22, F.R. App.P., will not issue. The Clerk is directed to dismiss the petition.

It is SO ORDERED.