**STATE OF MISSOURI, et al., Plaintiffs,**

**v.**

**Otis R. BOWEN, Secretary of the Department of Health and Human Services, et al., Defendants.**

No. 85–4592–CV–C–5.

United States District Court, W.D. Missouri, C.D.

April 1, 1986.

Robert Presson, Asst. Atty. Gen., Gregory W. Schroeder, Jefferson City, Mo., for plaintiffs.

Kenneth Josephson, Asst. U.S. Atty., Kansas City, Mo., Marcus Christ, Dept. of Health & Human Services, Baltimore, Md., for defendants.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Pending before the Court are cross-motions for summary judgment.[1] For the reasons set forth below, defendants' motion for summary judgment as to Counts I and II will be sustained, plaintiffs' motion for summary judgment as to Counts I and II will be overruled, and both parties' motions for summary judgment as to Count III will be overruled.

### I. Regulatory Background

This case arises under Title IV–E of the Social Security Act, the foster care and adoption assistance component of the Aid to Families with Dependent Children (AFDC) program. *See* 42 U.S.C. § 670 *et seq.* Title IV–E is a cooperative state-federal program which enables each State to provide foster care and adoption assistance for children who would otherwise be eligible for assistance under the State's AFDC plan or under the Supplemental Security Income (SSI) program. In order to participate in the Title IV–E program, a state must submit a plan to the Secretary of Health and Human Services which sets

---

**1.** Plaintiffs' "motion for summary judgment" is expressly denominated as such. Defendants' motion, in contrast, is denominated a "motion to dismiss." Because defendants' motion is accompanied by exhibits and affidavits, however, the Court has treated it as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b).

forth how the State proposes to administer the program. The State of Missouri, through its Department of Social Services, has participated in the Title IV–E program continuously since its inception.

Because the various state-federal categorical assistance programs are interrelated in terms of staff time and administrative expenses, each State is required to allocate a proportion of its commonly incurred expenses to each program. This process is known as the "allocation of costs." Under regulations promulgated by the Secretary, a State is required to submit a proposed Cost Allocation Plan (CAP) and all subsequent proposed CAP amendments to the federal agency's Division of Cost Allocation (DCA). 45 C.F.R. §§ 95.505–.507. The Director of the DCA is required to notify the State within 60 days whether its proposed CAP or CAP amendment is approved or disapproved, or whether the DCA needs additional time or information to evaluate the proposed CAP or CAP amendment. 45 C.F.R. § 95.511. If a State is dissatisfied with the DCA's disposition of a proposed CAP or CAP amendment, it is entitled to two rounds of administrative review. If the State remains dissatisfied after exhausting its administrative remedies, it may obtain judicial review of the agency's final decision.

## II. Factual Background

The following facts are not in dispute. Plaintiffs herein are the State of Missouri, the Missouri Department of Social Services, and the Director of that State agency. Defendants are the Secretary of the United States Department of Health and Human Services and various lower officials in that federal agency. The dispute between the parties involves a proposed CAP amendment submitted by plaintiffs.

The State agency submitted its proposed CAP amendment on September 25, 1984. Although there was some oral communication between the State agency and federal agency over the next two months, the federal agency did not make a written response to the proposed CAP amendment until December 20, 1984.[2] In its December 20 letter, the federal agency indicated that it needed additional information to evaluate the proposed CAP amendment. The federal agency also stated that its failure to comply with 45 C.F.R. § 95.511 did not constitute "deemed approval" of the proposed CAP amendment, but that the State could, as it said it would, begin filing claims for federal reimbursement under the proposed CAP amendment pursuant to 45 C.F.R. § 95.517.[3]

The correspondence between the parties shows that negotiations concerning plaintiffs' proposed plan amendment continued over the next several months. On February 4, 1985, Victoria Therien, Director of the Federal Receipts and Reporting Section of the Missouri Department of Social Services, wrote a letter to the federal agency which stated that plaintiffs were submitting their claim for federal reimbursement for the quarter ending December 31, 1984, "as permitted under 45 C.F.R. 95.517 in accordance with the [September 25, 1984] amendment and later revisions, which have

---

**2.** The December 20, 1984 letter from Merle Schmidt, Director of the Division of Cost Allocation, to the State agency was apparently prompted by a letter from the State agency to Mr. Schmidt dated December 12, 1984. In its December 12 letter, the State noted that the federal agency had not responded to the proposed CAP amendment within the 60 days allotted by 45 C.F.R. § 95.511 and informed the federal agency that, as a result of its noncompliance with § 95.511, the proposed CAP amendment was "deemed approved." Accordingly, the State agency indicated that, pursuant to 45 C.F.R. § 95.517, it would immediately begin claiming federal financial participation under its September 25 plan amendment.

**3.** In relevant part, that regulation provides:

"[I]f a State has submitted a plan or plan amendment for a State agency, it may, at its option claim FFP based on the proposed plan or plan amendment, unless otherwise advised by the DCA. However, where a State has claimed costs based on a proposed plan or plan amendment the State, if necessary, shall retroactively adjust its claims in accordance with the plan or amendment as subsequently approved by the Director, DCA."

45 C.F.R. § 95.517.

**40**

not, as of this date, been approved or disapproved." Although the State submitted its claim for federal financial participation (FFP) based on its proposed plan amendment, the DCA never approved payment thereunder. Instead, on May 29, 1985, the DCA finally communicated its formal disapproval of the proposed plan amendment to the State.

On July 2, 1985, the State responded to the federal agency's formal disapproval letter and asked the Regional Director of the Department of Health and Human Services for reconsideration of its proposed plan amendment. On reconsideration, the Regional Director concurred with the decision of the DCA. The State then filed a notice of appeal with the Grant Appeals Board (GAB) of the Department of HHS. The disposition of that administrative appeal does not appear in the record.

Meanwhile, on November 26, 1985, the State filed the instant lawsuit. In Counts I and II, the State is claiming that the DCA's failure to act promptly on its September 24, 1984 proposed plan amendment foreclosed the federal agency from later disapproving it. In Count I, plaintiffs assert that defendants' failure to give the State written notification within 60 days of the submission of its proposed plan amendment, as required by 45 C.F.R. § 95.5111, constituted "deemed approval" of the proposed plan amendment.[4] In Count II, plaintiffs claim that defendants' failure to promptly process the proposed plan amendment estopped them from later disapproving it. For relief under Counts I and II, plaintiffs ask this Court to declare that defendants' delay caused the State's proposed plan amendment to be approved by operation of law.

Count III does not directly involve the September 25, 1984 proposed plan amendment. Instead, in Count III, plaintiffs claim that the federal agency has refused to process claims for federal reimburse-

ment dating back to fiscal year 1980. The total amount of the State's claims which allegedly have been neither paid, deferred, nor disallowed is $6,482,729.00. For relief under Count III, plaintiffs ask this Court to declare that defendants' refusal to process these claims is without justification and to order defendants to process these claims.

### III. Discussion

#### A. *Count I*

In Count I, plaintiffs are essentially asking the Court to put a gloss on 45 C.F.R. § 95.511 whereby the federal agency's failure to provide the State with written notification within 60 days constitutes "deemed approval" of the State's proposed plan amendment. The undisputed facts are that the State filed its proposed plan amendment on September 25, 1984, and that the Director of the DCA did not respond in writing thereto until December 20, 1984. Thus, if plaintiffs' "deemed approval" theory is correct, plaintiffs would be entitled to summary judgment by reason of the federal agency's 86–day delay.

Defendants resist Count I on two grounds. First, defendants contend that the instant action is premature because plaintiffs have not exhausted their administrative remedies. Second, defendants argue that, even if the matter is ripe for judicial review, plaintiff's "deemed approval" theory should not be adopted by the Court because it is contrary to the Secretary's construction of 45 C.F.R. § 95.511.

■ The Court does not agree with defendants' exhaustion argument. The issue posed by Count I is a very narrow one: whether technical noncompliance with § 95.511 by the Director of the DCA constitutes "deemed approval" of the State's proposed plan amendment. The federal agency has previously announced and has consistently maintained that it does not subscribe to plaintiffs' "deemed approval" theory; consequently, there is no need to await exhaustion of administrative reme-

---

4. The "deemed approval" effect of noncompliance with § 95.511 is not expressly set forth in the regulation, nor is it an interpretation of the regulation acknowledged by the Secretary; in-

stead, the "deemed approval" construction is purely a gloss on the regulation advanced by the plaintiffs.

dies to ascertain the Secretary's position on this issue. The Court also notes that the issue raised by Count I is primarily a legal one; there is no need to await completion of administrative review to develop the record herein. Accordingly, the Court holds that exhaustion of administrative remedies is not required as a precondition to the Court's consideration of Count I.[5]

■ Turning to the merits, the Court holds that Count I fails to state a cause of action. Three observations support this result. First, § 95.511 does not expressly provide, nor does it implicitly suggest, that "deemed approval" is an appropriate sanction for the federal agency's failure to give the State written notification within 60 days. It bears emphasis that the 60–day deadline is not just a time limit for approval or disapproval of a proposed plan amendment. By its terms, § 95.511 only requires written notification of: (1) approval or disapproval; *or* (2) the need for modification of the proposed plan amendment; *or* (3) the need for additional information to evaluate the proposed plan amendment. Since the regulation leaves these options open to the DCA, the Court cannot say that the DCA's failure to respond in writing within 60 days constitutes "deemed approval" of the proposed plan amendment.[6]

■ Second the Court is reluctant to adopt plaintiffs' "deemed approval" construction of § 95.511 where the Secretary has never advanced nor approved such an interpretation. It is well-settled that the Secretary's interpretation of his regulations is entitled to substantial deference. *See, e.g., Medical Center of Independence v. Harris,* 628 F.2d 1113, 1117 (8th Cir. 1980). Here, there are no circumstances present which militate in favor of deviating from this general rule. Accordingly, the Court will not create a common law remedy for noncompliance with § 95.511 where such a ruling would conflict with the Secretary's interpretation of his own regulations.

■ Third, and most important, the Court notes that the State was not totally without a remedy during and after the 60–day period. 45 C.F.R. § 95.517 expressly allows a State to collect federal reimbursement under a proposed plan amendment from the date of submission. It is true that, under § 95.517, the State will only receive FFP to the extent the proposed plan amendment is ultimately approved. Nevertheless, under the regulatory scheme, it is apparent that § 95.517 is the vehicle by which a State may protect itself from federal agency delay. Indeed, plaintiffs used § 95.517 with respect to their proposed plan amendment: in a letter dated February 4, 1985—well after the proposed plan amendment would have been "deemed approved" under plaintiffs' theory—Victoria Therien of the State agency informed the federal agency that it was submitting its claim for FFP under the September 25, 1984 proposed plan amendment "as permitted under 45 C.F.R. § 95.-517."

The Court is not unsympathetic to the situation of the State agency. Inordinate delay by the federal agency makes it extremely difficult for the State to plan and execute its categorial assistance programs. Still, there is no legal authority underlying plaintiffs' "deemed approved" theory. Again, it bears emphasis that § 95.511 does not set a 60–day time limit for approval or disapproval. Although the federal agency's failure to give the State written notice within 60 days can only add more delay to the administrative review process, such a

---

**5.** *See McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Polaski v. Heckler,* 751 F.2d 943, 951 (8th Cir.1984); *Mental Health Ass'n of Minnesota v. Heckler,* 720 F.2d 965, 970–71 (8th Cir.1983).

**6.** The Court is particularly reluctant to put such a gloss on § 95.511 in the instant case in view of

two undisputed facts: (1) within the 60–day time limit, the federal agency had indicated orally that it needed more time to evaluate the proposed plan amendment; and (2) the federal agency did respond in writing and did request additional information from the State only 25 days after the 60–day period expired.

situation does not call for as extreme a remedy as "deemed approval." [7]

### B. *Count II*

Count II is, in essence, a common law variation on Count I. Whereas Count I claimed that noncompliance with § 95.511 results in "deemed approval" of a proposed plan amendment, Count II seeks the same result on the basis of equitable estoppel. Again, defendants have raised the exhaustion defense. That defense is inapplicable with respect to Count II for the same reasons it was inapplicable to Count I.

■ Turning to the merits, the Court holds that Count II fails to state a cause of action. When asserted against a non-governmental defendant, an equitable estoppel claim requires proof of two essential elements: (1) a representation of material fact by the defendant; and (2) reasonable reliance on such representation by the plaintiff. When an estoppel claim is asserted against a governmental defendant, even more is required. The general rule is that equitable estoppel is not applicable to the federal government absent proof of some "affirmative misconduct" by the government. *Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *Immigration & Naturalization Service v. Miranda*, 459 U.S. 14, 103 S.Ct. 281, 282–83, 74 L.Ed.2d 12 (1982): *Green v. United States Dept. of Labor*, 775 F.2d 964, 969–70 (8th Cir.1985).

■ Here, the Court finds that neither of the elements of ordinary equitable estoppel is present, much less the special showing of "affirmative misconduct" required to state an estoppel claim against the government. First, there is no indication that the federal agency made any representation to the State that its proposed plan amendment would be approved; to the contrary, the State's basic complaint is that the federal

agency failed to give any indication, one way or the other, concerning the proposed plan amendment.

Second, even if the DCA's inaction can be characterized as a "representation," there is no indication that plaintiffs "reasonably relied" thereon. Indeed, in the February 4, 1985 letter from Victoria Therien to the federal agency, the State acknowledged that it was relying on § 95.517 in submitting its claim for the quarter ending December 31, 1984. By its terms, § 95.517 provides that reimbursement on the basis of a proposed plan amendment will be allowed *only* to the extent such plan amendment is finally approved. Moreover, Ms. Therien's letter expressly noted that its proposed plan amendment had not yet been approved or disapproved. In view of these admissions, it is apparent that there was no reasonable reliance by plaintiffs on any representation by defendants.

Third, even if an estoppel claim would lie against an ordinary defendant under the circumstances of the instant case, there is no evidence of any "affirmative misconduct" by defendants which could render the federal government liable under an estoppel theory. As noted above, the sole claim of wrongdoing is that the DCA failed to take prompt action on the State's proposed plan amendment. Such inaction falls far short of the "affirmative misconduct" requirement. Accordingly, Count II must be dismissed.

### C. *Count III*

Count III is both factually and analytically distinct from Counts I and II. Count III involves a claim that the federal agency has wrongfully refused to process the State's claims for FFP dating from 1980 to 1985. Defendants' sole ground for summary judgment is the "exhaustion of administrative remedies" defense. That defense has no application here, for plaintiffs' claim

---

7. Instead, the Court would suggest that, where the federal agency has failed to provide a written response within 60 days, the State should promptly bring an action to enforce compliance with § 95.511 in federal district court. Although it would be inconvenient to go to the trouble of filing such a lawsuit, the State at least could recover its legal fees under the EAJA where the federal agency has, in fact, failed to comply with § 95.511.

is that defendants have wrongfully with-held agency action. In other words, plain-tiffs' complaint is that defendants will not allow the State to exhaust its administra-tive remedies. Under such circumstances, the exhaustion defense is inapplicable.

The Court will need to conduct a hearing concerning plaintiffs' motion for a prelimi-nary injunction in the near future. The focal issues will be whether the federal agency has failed to process the State's claims for FFP and whether there is any justification for such inaction.

## IV. Conclusion

In accordance with the foregoing, it is hereby

ORDERED that defendants' motion to dismiss is sustained in part and overruled in part. Counts I and II are dismissed with prejudice. Count III is not dismissed. It is further

ORDERED that plaintiffs' motion for summary judgment is overruled. It is fur-ther

ORDERED that the parties shall com-plete all discovery concerning Count III by April 21, 1986. It is further

ORDERED that a hearing on plaintiffs' motion for a preliminary injunction con-cerning Count III is set to commence at 9:00 A.M. on April 28, 1986, at the United States Courthouse, Kansas City, Missouri. It is further

ORDERED that the parties shall file the following materials by April 21, 1986:

(1) Proposed findings of fact and conclu-sions of law;

(2) Exhibit lists and witness lists; and

(3) Trial briefs.