**CONAX FLORIDA CORPORATION, Plaintiff,**

v.

**The UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 85–3111.**

United States District Court, District of Columbia.

July 30, 1986.

Richard C. Spitzer, Ebert & Bowytz, Barry E. Bretschneider, Washington, D.C., for plaintiff.

Rebecca L. Ross, Asst. U.S. Atty., R. Anthony McCann and Kevin J. Murphy, Office of Litigation, Dept. of Navy, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

In September 1985, plaintiff Conax Florida Corporation ("Conax") filed a complaint and motion for preliminary injunction against the Secretary of the Navy and several Department of Navy officials, alleging that they had threatened to improperly remove from drawings Conax submitted pursuant to a contract certain restrictive "rights-in-data" legends. Those legends prohibited defendants from reproducing or otherwise disseminating the drawings or information contained therein without plaintiff's consent. The Court found the possibility that defendants' threatened actions would irreparably harm plaintiff significant enough to warrant entry of a preliminary injunction and entered an order enjoining such reproduction or dissemination. *See* Memorandum Order of December 23, 1985. 625 F.Supp. 1324.

On January 2, 1986, defendants moved the Court to reconsider its grant of injunctive relief. Plaintiff was then directed to respond to defendants' motion and to support its asserted position that discovery was warranted to augment the administrative record. Defendants were further directed to file a supplemental memorandum in support of their motion for summary judgment, filed initially in response to plaintiff's motion for preliminary injunction, to which plaintiff responded.

After full review and consideration of the pleadings that followed, the Court finds that no further evidentiary proceedings are required in this matter and that defendants properly submitted their case on the administrative record. Further, although plaintiff made a strong showing that it was entitled to injunctive relief in order to prevent defendants' actions from rendering the case moot, a closer review of the record reveals that plaintiff's position on the merits is not well supported. Accordingly, for the reasons set forth below, the Court grants defendants' motion for reconsideration as well as their motion for summary judgment. Plaintiff's complaint is thus dismissed.

## BACKGROUND

In late 1978, plaintiff submitted to the Navy an unsolicited proposal for the development of a Salt Water Actuated Release System ("SEAWARS") that would cause the life vests of downed navy pilots to inflate automatically upon contact with sea water. Approximately one year later, plaintiff entered into a contract with the Navy to deliver ten test units for evaluation. Sometime later, in April 1981, plaintiff and the Navy entered into a second contract, Contract No. N00123-81-C-0391 ("Contract '0391" or "Long Beach contract"), for further development of the device. Work ordered under the contract was divided into three phases, corresponding roughly to the design, development and testing, and manufacture and delivery of the device. The contract contained a clause that afforded the government only limited rights in drawings submitted under a certain caption, "Data Item AOOF." The Contract Data Requirement List ("CDRL") attached to the contract provided that Item A00F covered drawings and other information regarding the actual salt water-activated switch. Delivery of drawings under Item AOOF was completed, apparently, on June 1, 1981, when Conax tendered a shipment invoice indicating that that shipment completed Phase I of the contract and delivery under Item AOOF.[1]

The CDRL provided that changes to the basic design of the device were to be reflected in drawings submitted under Data Item AOOA. Beginning on September 18, 1981, after delivery of Item AOOF was accepted, and Conax submitted what were apparently revised drawings referencing Item AOOF. The drawings did not bear the designation "AOOA."

---

1. Certain of the data items were required to be resubmitted; these items were accepted on August 26, 1981.

On June 2, 1983, Conax and the Navy entered into a third contract, Contract No. N60530–83–C–0043 ("Contract '0043'" or "China Lake contract"). That contract was a fixed-price supply contract, which did not call for further research or development of the SEAWARS system. Rather, the "baseline" for the system was to be that developed at the conclusion of the Long Beach contract. Drawings submitted pursuant to the contract were to be delivered under Data Item AOO8.

It was and is the position of Conax that drawings delivered under Item AOO8 continue to benefit from the protections afforded drawings submitted under Item AOOF of the Long Beach contract. Beginning in March of 1984, however, the Navy challenged the propriety of the restrictive legends attached by Conax to the drawings that it submitted under Item AOO8. After a series of meetings between the parties and after plaintiff's submission of a formal claim, supported by legal argument, the Navy issued its decision rejecting plaintiff's position, on August 16, 1985. By letter of September 6, 1985 the Navy asserted that, while it had commenced reproducing the drawings in question, no drawings would be made available to the public until the process was complete, an estimated 90 days later.

Fearing that the Navy would begin disclosing the drawings as soon as possible,[2] plaintiff initiated this suit and sought entry of a preliminary injunction. Plaintiff's design was for this Court to enter an injunction to preserve the status quo, while it pursued either an administrative appeal before the Armed Services Board of Contract Appeals ("ASBCA") or a claim in the U.S. Court of Claims. Defendants cogently argued in response that this Court would be without jurisdiction to grant preliminary relief incident to the prosecution of a claim in another forum, citing *Telecommunications Research & Action Center v. Federal Communications Commission*, 750

F.2d 70, 77–79 (D.C.Cir.1984). Accordingly, the Court's December 1985 Memorandum Order provided that entry of a preliminary injunction was premised upon plaintiff's dismissal of its then-pending ASBCA appeal. Jurisdiction in this Court was predicated upon defendants' alleged violation of the Trade Secrets Act, 18 U.S.C. § 1905 (1982). *See Chrysler Corp. v. Brown*, 441 U.S. 281, 318, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 964–70 (D.C.Cir.1982). Plaintiff dismissed its agency appeal and now relies on this Court to adjudicate the merits of its claim.

## ANALYSIS

### A. Defendants' Motion for Reconsideration

#### 1. Entry of the preliminary injunction

Defendants' motion for reconsideration of the entry of the preliminary injunction was occasioned at least in part by the unusual procedural posture of the case. In arguing the necessity of preliminary relief, plaintiff stressed that it would likely prevail on the merits of its case as presented to the ASBCA. Although plaintiff also asserted that this Court would similarly find its claim meritorious, the issue was never fully addressed before the injunction was entered. Accordingly, the Court directed defendants to renew their motion for summary judgment.

While defendants have filed supplemental points and authorities in support of their motion for summary judgment on the merits, they also rely upon certain procedural arguments briefed in their motion for reconsideration. First, they maintain that the preliminary injunction should never have issued in the first instance, because plaintiff never fully briefed the merits of its claim so as to demonstrate a substantial likelihood of success in this forum, as re-

---

**2.** The Navy's purpose in disclosure was to allow for competitive bidding on the SEAWARS system for fiscal year 1987. Accordingly, it asserts that the drawings must be released to industry by August 1, 1986; otherwise, it would be forced to rely upon Conax to furnish its requirements as a sole source supplier.

quired by *Washington Area Metropolitan Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977). Second, they assert that plaintiff's contention that *de novo* review is warranted, review that would preclude summary judgment, is groundless.

The Court recognizes that the procedural posture of this case may have caused some confusion. Nevertheless, since the parties have now fully briefed the merits, it is unnecessary now to consider the effect of any failure of plaintiff fully to address the merits previously. Moreover, because the Court now grants defendants' motion for summary judgment, it at the same time vacates the preliminary injunction.

### 2. Scope of review

The second prong of defendants' motion for reconsideration merits further examination. Defendants, of course, would like any review of the merits of plaintiff's claim to be undertaken solely upon the record as developed at the agency level. Plaintiff, on the other hand, vigorously asserts that additional discovery is necessary to augment the record. While it is true that in exceptional cases *de novo* review, which would contemplate the taking of additional discovery, may be had by a party challenging agency action, *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284–85 (D.C. Cir.1981), the general rule remains that "[t]he focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court." *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d at 284 (citing *Camp v. Pitts*, 411 U.S. at 142, 93 S.Ct. at 1244). By and large, the situations in which *de novo* review is warranted are limited to those in which "the agency action is adjudicatory in nature and the fact finding procedures are inade-

quate" or in which "issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." *Id.* at 285 (citing *Camp v. Pitts*, 411 U.S. at 142, 93 S.Ct. at 1244). The second category of cases is certainly inapposite; upon closer scrutiny, the first category gives plaintiff no more comfort.

Assuming that action on plaintiff's contract claim is a type of informal "adjudication," it is unclear that the fact-finding procedures available to Conax at the time it initially submitted its claim were "inadequate." Defense Acquisition Regulation ("DAR") 7–104.9(d), which was incorporated into the third contract, Contract '0043, by reference, provided that Conax would have 60 days within which to establish "by clear and convincing evidence" its rights in the data in question. Accordingly, as discussed *supra*, Conax submitted a claim to the contracting officer supported by a lengthy memorandum. There was no limit on the types of documents or evidence that Conax could have included in its submission.

Conax argues, however, that had it been permitted to pursue its appeal before the ASBCA,[3] it would have been entitled to a full adversarial hearing. Because it had to abandon the proceeding pending before the ASBCA, Conax asserts, the fact-finding procedures completed at the agency level—that is, those before the contracting officer—were necessarily inadequate. Yet a review of the kind of discovery that plaintiff seeks is irrelevant to any reasoned disposition of this case. The information that plaintiff wants will not illuminate what the Court feels is the crucial issue, specifically, whether the government paid for the drawings that Conax asserts should be protected.[4] Rather, Conax seeks discovery going to the bias and predisposition of the contracting officer who denied its

**3.** Conax claims that the Navy's threat to remove the restrictive legends forced it to forego its ASBCA appeal. Because the ASBCA has no authority to issue a preliminary injunction, Conax argues, the threatened action forced it to come

to this Court, where it could obtain such an injunction.

**4.** *See infra* Section B.

claim.[5] As indicated in the discussion below, these factors have absolutely no relevance to the material issues to be resolved. While it may be true, in exceptional cases, that bias on the part of an agency official might significantly taint his decision, there is not the slightest bit of evidence in this record to suggest that any undue pressure had been brought to bear upon the contracting officer, other than that the Navy was interested in the data in question. Moreover, even if an agency official's decision could have been motivated in part by a degree of partiality, if apart from those considerations it represents a reasoned resolution of the material issues, it must be upheld by a reviewing Court. *See United Steelworkers of America, AFL–CIO–CLC v. Marshall*, 647 F.2d 1189, 1209 (D.C.Cir. 1981). In this proceeding, the contracting officer's decision was well within the bounds of rationality; he took an exhaustive look at the record, made several reasonable inferences therefrom, and came to a resolution. In short, there is no reason for the Court to look outside the present record in this case.

## B. Defendants' Motion for Summary Judgment

■ If, based upon the administrative record as presently constituted, defendants can demonstrate that the relevant material facts support the reasonableness of the Navy's decision, they are entitled to judgment as a matter of law. *See* 5 U.S.C. § 706(2)(A) (1982); *Camp v. Pitts*, 411 U.S. at 142, 93 S.Ct. at 1244. Such is the case even if the record contains disputed issues of fact. Conversely, to prevail on its claim that defendants abridged its rights, plaintiff must show that the Navy's decision was without rational basis or otherwise contrary to law. Because the administrative record adequately supports the posi-

tion taken by defendants, summary judgment in their favor is warranted.

What rights Conax has or had in the data in question are governed by certain provisions of the Defense Acquisition Regulations incorporated by reference into the several contracts. DAR 7–104.9, captioned "Rights in Data and Computer Software," provides that the government shall have unlimited rights in data developed through research done pursuant to a contract with the government or, in other words, developed at government expense. *See* DAR 7–104.9(b)(1)(i), (iv). The government is also entitled to unlimited rights in data necessary "for the purpose of identifying sources, size, configuration, mating and attachment characteristics, functional characteristics and performance requirements," DAR 7–104.9(b)(1)(vi), or materials required to be delivered under the contract "for installation, operation, maintenance or training purposes." DAR 7–104.9(b)(1)(vii). On the other hand, the government is entitled to only limited rights[6] in data "listed or described in an agreement incorporated into the [s]chedule of [a] contract, which the parties have agreed will be furnished with limited rights...." DAR 7–104.9(b)(2)(i). As noted above, such an agreement was made part of the Long Beach contract and governed all data submitted under Item AOOF.

The crucial issue, then, is whether the drawings for which Conax now seeks protection are covered by the stipulated limited rights provision. To resolve that issue, two additional questions must be answered. First, were the drawings in question submitted under Item AOOF? Second, are they still entitled to the protections agreed upon? If the drawings were not initially covered under Item AOOF, they would not be entitled to the protections of the stipulated provision. If the drawings were initially submitted under Item AOOF, but

---

**5.** *See* Plaintiff's Memorandum Regarding Scope of Discovery and Further Proceedings in this Case, filed January 14, 1986, at 18–21.

**6.** Limited, as opposed to unlimited, rights prevent the government from reproducing or dis-

tributing the documents or data contained therein, or utilizing them itself in manufacture, without the express permission of the contractor. *See* DAR 7–104.9(a)(8).

were later revised or modified, they would lose the protections afforded by the stipulated provision, which by its terms covered only drawings submitted under Item AOOF, and not revised drawings submitted under Item AOOA.

In reviewing the list of documents for which Conax seeks continued protection (hereinafter "Schedule"),[7] the contracting officer determined that, while they had been initially submitted under Item AOOF, most of the drawings had subsequently been modified before completion of the Long Beach contract. Decision (August 16, 1985) at 19–21. A look at that list of documents reveals that most bear two or more dates each—one following the designation "ORIG" and one or more following the designation "REV." Comparing these designations with a series of transmittal letters, issued beginning in September 1981, see Administrative Record ("A.R.") 381–421, the contracting officer concluded that the designations did in fact refer to revised drawings. Decision at 20. Because Conax has not retained the drawings in question,[8] the record is and will forever be limited on this question to the schedule of documents together with the transmittal letters. In view of that fact, the Court is not prepared to say that the contracting officer erroneously concluded that, after initially submitting them under Item AOOF, Conax later modified the drawings for which it seeks protection. While the transmittal letters indicate that Conax submitted the revised drawings under Item AOOF, the contracting officer reasonably concluded that they should have been submitted under Item AOOA. Decision at 18. As noted, the CDRL provided that changes in drawings previously submitted were to be delivered under Item AOOA. As the

contracting officer reasoned, that provision would be rendered superfluous if plaintiff could continue to submit revised drawings under Item AOOF, after that item had been otherwise closed out.

■ Conax argues that the Navy's acceptance of documents under Item AOOF after that item had been completed, as well as its general course of dealing, estops it from asserting that the documents were not properly delivered under Item AOOF. Yet nothing in the record suggests that the Navy is guilty of the kind of affirmative misconduct that the Supreme Court indicated *might* trigger estoppel against the United States. *See Immigration and Naturalization Service v. Miranda,* 459 U.S. 14, 17, 103 S.Ct. 281, 282, 74 L.Ed.2d 12 (1982). Indeed, this Court has addressed the issue of estoppel against the government on the same or identical facts and found the doctrine to have been inapplicable. *Williams International Corp. v. Lehman,* C.A. No. 84–1122, slip op. at 14–17 (D.D.C. Nov. 6, 1984) [Available on WESTLAW, DCTU database] (Johnson, J.). In *Williams,* the Court found that, because DAR 7–104.9(d) "permits challenges to restrictive legends not withstanding any provision of the contract[,]" the Navy's acceptance of drawings marked with restrictive legends did not estop it from later challenging those legends. *Id.* at 16. The Court finds that reasoning persuasive and fully applicable to the instant case.

If the drawings in question were not properly submitted under Item AOOF, then of course they lose the protections of the stipulated limited rights provision. Absent the protections of that provision, the status of the drawings must be analyzed in ac-

---

**7.** Attached as Enclosure 1 to the contracting officer's decision, submitted as Exhibit T to plaintiff's Verified Complaint.

**8.** Conax asserts that it destroyed the drawings pursuant to a "Configuration Management Plan," which required all superseded versions to be disposed of. Because this Configuration Management Plan, while not a part of the contract, was allegedly "approved" by the Navy, Conax argues that the Navy cannot now argue that it has failed to document its claim. Yet, as

the contracting officer concluded, the purpose of the Plan apparently was to prevent the inadvertent use of obsolete drawings. Decision at 20. Clearly, however, DAR 7–104.9(p), which was incorporated into the contract by reference, required Conax to be prepared to document the propriety of its restrictive rights legends. *See Williams International Corp. v. Lehman,* C.A. No. 84–1122, slip op. at 20 (D.D.C. Nov. 6, 1984) [Available on WESTLAW, DCTU database].

cordance with DAR 7–104.9(b)(1)(i) and (iv). The relevant question, then, is whether the drawings were revised pursuant to the contract and at government expense, in which case the government is entitled to unlimited rights in the data. Because the drawings were submitted after completion of Item AOOF and before completion of the contract, they were necessarily developed during the course of performance and at government expense. Accordingly, the government is entitled to unlimited rights in those documents listed in the Schedule that were revised subsequent to delivery of Item AOOF.

■ In addition to the documents just mentioned, Conax includes on the Schedule a number that bear the designation "CC." The contracting officer concluded that those drawings fell within DAR 7–104.9(b)(1)(vi) and (vii), which provide that the government is entitled to unlimited rights in data relating to "form, fit and function," as well as operation and maintenance. Decision at 20. Moreover, as the contracting officer noted, Conax indicated in a letter of March 13, 1981, that it would provide without a limited rights legend certain data "required for usage or service ... and ... [which] would not divulge the design principles of the [device]." A.R. 164. The contracting officer took this disclaimer to be coextensive with DAR 7–104.9(b)(1)(vi) and (vii) and accordingly held that drawings falling into that category were not subject to the stipulated limited rights provision. Decision at 17. That conclusion is entirely reasonable. Accordingly, the government is entitled to unlimited rights in all drawings on the Schedule submitted by Conax bearing the designation "CC."

■ The contracting officer further noted that some of the documents were marked as "purchased" and would necessarily fall outside the scope of limited rights protection, pursuant to DAR 7–104.9(b)(1)(i) and (iv). Again, that conclusion was reasonable and must be upheld.

Certain of the items on the Schedule appear to refer neither to revised nor purchased drawings. Unfortunately, the contracting officer did not deal specifically with whether these drawings came within the protections of the limited rights stipulation or regulations. However, he did note that DAR 7–104.9(p) placed the burden on Conax of coming forward with documentation to support a finding that the drawings in question were protected. This Conax has not done with respect to the revised or purchased drawings. While the Court might conclude that drawings listed on the Schedule that are designated neither "revised" nor "purchased" are original Item AOOF drawings, such does not necessarily seem to be the case. At least some of the drawings bear dates subsequent to August 1981, when Item AOOF was closed out. If the others truly are original AOOF drawings, Conax has not adequately identified them. Moreover, because Conax has had ample opportunity to present its claim, the Court feels that no purpose would be served by remanding the case to the agency on this limited issue. Remand would be especially futile, in view of the fact that, as discussed *supra*, Conax destroyed all superseded drawings, rendering impossible comparison of those drawings with the drawings that Conax now claims are protected. In short, the record is now closed, and further review of the Navy's decision is impossible.

## CONCLUSION

While the Court is sympathetic to plaintiff's claim that the government's action will result in the loss of its intellectual property, it nevertheless feels that plaintiff has failed to properly substantiate its claim. And since the burden to justify its position is clearly on plaintiff, the decision of the Navy that the drawings were not protected must be upheld as reasonable. Because the drawings were and are not protected under the contract and applicable regulations, they and the information contained therein are not "trade secrets" within the meaning of 18 U.S.C. § 1905. Consequently, the Navy's reproduction and dissemination of the drawings cannot, as a

matter of law, constitute a violation of the Trade Secrets Act.[9]

Accordingly, summary judgment is entered for defendants. An appropriate Order will be entered.

9. Although the contracting officer did not address the issue of whether the Act barred dissemination of the drawings—because plaintiff did not raise the issue—remand is not required to resolve the matter, which is purely one of law and, hence, reviewable *de novo*.