# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2207

_____

Lazaro Castillo,                                   *
                                                   *
              Appellant,                           *
                                                   *
       v.                                          *    Appeal from the United States
                                                   *    District Court for the
Tom Ridge, Secretary, Department of                *    District of Nebraska.
Homeland Security; F. Gerard Heinauer,             *
U.S. District of Citizenship and                   *
Immigration Services, Director, Omaha              *
Office,                                            *
                                                   *
              Appellees.                           *

_____

Submitted:  January 13, 2006
     Filed:  April 21, 2006

_____

Before WOLLMAN, LAY, and ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

       Lazaro Castillo appeals the district court's[1] grant of summary judgment, which dismissed his action for a writ of mandamus to compel Tom Ridge, former Secretary of the Department of Homeland Security, and F. Gerard Heinauer, Director of the

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

Omaha Office for the U.S. Citizenship and Immigration Services (CIS), to favorably adjudicate his application for adjustment of status. We affirm.

## I.

Sometime between 1989 and 1992, Castillo, a Mexican citizen, entered the United States without inspection. In 1992, he applied for asylum. Following its denial of the application, the U.S. Immigration and Naturalization Service (INS)[2] instituted deportation proceedings. Castillo failed to appear for his deportation hearing, and the immigration judge entered an *in abstentia* order of deportation in 1993. In 1995, Castillo was convicted of child abuse in Maryland.

On April 2, 1995, Castillo married an American citizen. On June 27, 1995, Castillo's wife filed a visa petition on his behalf under § 204 of the Immigration and Nationality Act (INA). See 8 U.S.C. § 1154. Castillo simultaneously filed an application for adjustment of status pursuant to INA § 245. See 8 U.S.C. § 1255. On July 3, 1995, Castillo moved to reopen his deportation proceedings, and on September 22, 1995, an order was entered granting the motion. On September 26, 1995, the INS approved the visa petition filed on Castillo's behalf. On January 21, 1997, an immigration judge terminated, without prejudice, deportation proceedings against Castillo for the sole purpose of allowing the INS to adjudicate Castillo's application for adjustment of status.

On October 12, 2001, Castillo, via a letter from his then-counsel, attempted to schedule an interview with INS officials to adjudicate his adjustment of status

---

[2]On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice, and the responsibilities for providing immigration-related services and benefits were transferred to the CIS, a bureau of Homeland Security. For simplicity, however, we will continue to refer to the CIS as the INS throughout this opinion.

application. The INS failed to respond, and no interview was scheduled. On June 26, 2003, Castillo and his wife separated, and on July 3, 2003, his wife filed for divorce. On July 28, 2003, Castillo's newly retained counsel requested an interview and an adjudication of Castillo's adjustment of status application. On August 15, 2003, the INS notified Castillo that his interview was scheduled for August 25, 2003. Because Castillo's counsel had a conflict on this date, she requested a new interview date. The August 25 interview date was continued, but no new date was scheduled.

Because INA § 212(a)(2)(A)(i)(I) provides that aliens convicted of crimes involving moral turpitude are ineligible to receive visas and ineligible to be admitted to the United States, Castillo filed an application for waiver of ground of excludability under INA § 212(h) on September 29, 2003. See 8 U.S.C. §§ 1182(a)(2)(A)(i)(I) & (h). This application functioned as a request that the Attorney General waive the application of INA § 212(a)(2)(A)(i)(I) as applied to Castillo. The grant of such a waiver is within the Attorney General's discretion. See 8 U.S.C. § 1182(h).

On November 17, 2003, Castillo's counsel wrote to a local INS official:

> I am writing on behalf of my client, Lazaro Castillo, to schedule an interview regarding his I-485 application. The application was originally filed on June 22, 1995. An interview notice was mailed on August 15, 2003, and received August 20, 2003, for an interview on August 25, 2003. We requested rescheduling due to short notice and a conflict in my schedule.
>
> We are requesting a new interview date as soon as possible. Please contact me if you have any questions.

J.A. at 48. Counsel received no response to this request.

On January 14, 2004, the INS was given notice that Castillo's divorce was pending. Following this notification, a number of e-mails were exchanged among INS officials suggesting that the INS should continue gathering additional information regarding the divorce proceeding before adjudicating Castillo's application. One INS official suggested that the INS should wait until a final divorce decree was issued before adjudicating the application so that the INS would have the strongest evidence to support a denial of the application.

On January 23, 2004, Castillo's counsel sent the INS an e-mail that stated in part:

> Why can't you adjudicate prior to the divorce? That is the whole point. We have been forthcoming about why we want the interview prior to the divorce. . . . [The INS] is on notice that Castillo will be detrimentally harmed if the adjudication is late, and this is [the INS's] chance to correct its negligence in not interviewing in the eight years that the case was pending.

J.A. at 284. Later that same day, Castillo's counsel sent yet another e-mail, pointing out that the interview would need to be completed by February 9, 2004, the date the divorce decree was scheduled to be entered. The e-mail also recounted the fact that counsel had made many earlier phone calls asking for a quick rescheduling of the August 25, 2003, hearing date, all to no avail.

On February 2, 2004, Castillo filed this action in the district court, seeking equitable relief from the INS's failure to schedule an adjudication hearing on Castillo's adjustment of status application. On February 6, 2004, the INS interviewed Castillo and took the matter under advisement.

On March 2, 2004, a decree was entered dissolving Castillo's marriage. On March 22, 2004, the INS sent notice of the revocation of Castillo's visa petition and

denied his waiver and application for adjustment of status. The INS explained that because Castillo's divorce triggered the automatic revocation of his visa, 8 C.F.R. § 245.1(c)(4) rendered him ineligible to apply for adjustment of status.

On January 20, 2005, the INS moved for summary judgment in the mandamus action. Castillo did not oppose the motion, nor did he file a counter-motion for summary judgment. On March 31, 2005, the district court granted summary judgment in favor of the INS. It is from this judgment that Castillo appeals, asking that we grant a writ of mandamus to compel the INS to adjudicate in his favor his adjustment of status application and arguing that the INS's delay in adjudicating his application until after his divorce was final constituted a dilatory tactic that should estop the INS from denying his application.

## II.

We review *de novo* the district court's grant of summary judgment. Gipson v. INS, 284 F.3d 913, 916 (8th Cir. 2002). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, indicates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

A district court may grant a writ of mandamus only in extraordinary situations and only if: (1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy. In re SDDS, Inc., 97 F.3d 1030, 1034 (8th Cir. 1996). Further, whether a writ of mandamus should issue is largely a matter within the district court's discretion. See In re MidAmerican Energy Co., 286 F.3d 483, 486 (8th Cir. 2002) (per curiam).

Castillo has been convicted of child abuse, and he does not dispute the INS's assertion that this is a crime involving moral turpitude. Castillo was therefore not eligible for adjustment of status until he received a waiver under INA § 212(h). See 8 U.S.C. § 1182(h). The grant of a § 212(h) waiver is within the Attorney General's discretion, id., and thus the INS is not under a nondiscretionary duty to grant it. Accordingly, Castillo cannot establish a clear and indisputable right to a favorable adjudication of his application, and thus his request for a writ of mandamus must fail.

In support of his argument for issuance of a writ of mandamus, Castillo also argues that the INS should be estopped from denying his application for adjustment of status because it intentionally and unreasonably delayed adjudicating his application. To establish a claim for estoppel against the government, the claimant must prove: (1) false representation by the government, (2) that the government intended to induce the claimant to act on that representation, (3) the claimant's lack of knowledge or inability to obtain the true facts, (4) that the claimant relied on the misrepresentation to his detriment, and (5) affirmative misconduct by the government. See Varela v. Ashcroft, 368 F.3d 864, 866 (8th Cir. 2004).

Castillo has failed to establish the requisite elements of estoppel. Castillo contends that the INS should be estopped because of its eight-year delay in adjudicating his application and because INS e-mails establish bad faith on the part of the INS in delaying adjudication. Castillo has not shown, however, how the delay or the alleged bad faith by the INS constitute false representation or how he relied on the delay or bad faith to his detriment.

Further, we note that the relevant delay in adjudicating Castillo's petition was not particularly lengthy. In light of his criminal conviction, Castillo was not eligible for adjustment of status until he received a waiver pursuant to INA § 212(h). See 8 U.S.C. § 1182(h). Castillo did not file his waiver request until September 29, 2003,

and, as recounted above, the INS denied his application for adjustment of status on March 22, 2004. Accordingly, it took the INS six months, not eight years, to adjudicate Castillo's application for adjustment of status. This is less than the eighteen-month delay in <u>INS v. Miranda</u>, which the Supreme Court held fell far short of affirmative misconduct by the INS. 459 U.S. 14, 19 (1982) (per curiam). Such a delay is reasonable in light of the number of applications received by the INS and the INS's need to investigate the validity of the applications. <u>See</u> <u>id.</u> at 18. However troubling the e-mails implying that the INS intentionally delayed adjudication until Castillo's divorce proceedings had been completed, they do not constitute the basis for a ruling that Castillo was clearly and indisputedly entitled to a favorable adjudication of his request for a waiver.

The judgment is affirmed.

_____