**AMERICAN MEAT INSTITUTE, National Pork Producers Council, Bluebird, Incorporated, Dinner Bell Foods, Incorporated, George A. Hormel and Company, The Rath Packing Company, The Smithfield Packing Company, Incorporated, and Wilson Foods Corporation, Appellees,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant,**

and

**National Turkey Federation, Marval Poultry Company, Incorporated, and Shenandoah Food Processors Corporation, Appellants.**

No. 80–1639.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1981.

Decided April 7, 1981.

Philip C. Olsson, Washington, D. C. (Richard L. Frank, Richard H. Ekfelt, Olsson & Frank, P. C., Washington, D. C., John M. Hollis, Bruce A. Kayuha, Willcox, Savage, Lawrence, Dickson & Spindle, P. C., Norfolk, Va., on brief), for appellants.

J. Stanley Stroud, Chicago, Ill. (Richard L. Jacobson, James R. Henderson, Mayer, Brown & Platt, Chicago, Ill., on brief), for appellees.

---

Before MURNAGHAN and ERVIN, Circuit Judges, and MERHIGE *, District Judge.

PER CURIAM:

The National Turkey Federation and others appeal the district court's order enjoining the Secretary of the Department of Agriculture (the Secretary) from enforcing one of its product label regulations, D.C., 496 F.Supp. 64. We vacate that order.

I.

In 1975, the Secretary approved labels indentifying a turkey product as "Turkey Ham," which was made with cured turkey thigh meat and which resembled pork ham in taste and appearance. The approval was made because the label was found not to violate 9 C.F.R. § 317.8(b)(13) which reads:

The word "ham," without any prefix indicating the species of animal from which derived, shall be used in labeling only in connection with the hind legs of swine.

This regulation was challenged in 1977 by the American Meat Institute (AMI) and the National Pork Producers Council, both of whom requested that use of the term "ham" be confined to food products made from the hind legs of swine. The Secretary responded by proposing a standard for the composition and labeling of "Turkey Ham." Prior to initiating a rule-making procedure, the Secretary commissioned an independent study to ascertain consumer understanding of the composition of "Turkey Ham." The survey disclosed that most consumers knew that it was a turkey product, but indicated that some consumers did not understand that turkey was the only meat in the product.

In June 1978, the Secretary proposed a rule that would have required the label "Turkey Ham" to be qualified by the phrase "Cured Turkey Thigh Meat" in the same color, type and background and in one-half size lettering. After a ninety day notice and comment period, the Secretary promulgated its final rule, see 9 C.F.R. § 381.171 (1979), allowing the use of the qualified "Turkey Ham" label. In support of the final rule, the Secretary said:

The name "Cured Turkey Thigh Meat" accurately describes the product now known as "Turkey Ham." However, the term "Turkey Ham" has been used as the name of the product since 1975 and better connotes the characteristics which have become associated with the product. As noted above, the term "Turkey Ham" has been misleading to some consumers because they thought it represented a product containing pork. This problem, of course, has been lessened somewhat as more persons have become acquainted with the name and the product. However, in order to assure that consumers are not misled, it has been determined that the product should be named "Turkey Ham" but also qualified by the term "Cured Turkey Thigh Meat" in order to clearly inform consumers that the product consists of turkey but not pork.

44 Fed.Reg. 51,190 (1979).

AMI sued the Secretary to overturn the rule and the National Turkey Federation and others intervened in support of the regulation. The district court found that the Secretary had acted arbitrarily and capriciously in promulgating the rule because he did not "gather any reliable evidence that the label 'Turkey Ham—Cured Turkey Thigh Meat' would not mislead a substantial number of consumers into believing the product might contain at least some pork." Memorandum Opinion at 68. The district court found that

"ham" means the hind leg of swine, although there are many types of ham, such as smoked ham, corned ham, fresh ham, baked ham, sliced ham, country ham, Smithfield ham, and so on, but all of these refer to the hind leg of swine. *Id.* at 67.

Finding that "[t]he materials and evidence before the Secretary could only have led

* The Honorable Robert R. Merhige, Jr., United States District Judge for the Eastern District of

Virginia, sitting by designation.

him to conclude that the proposed label 'Turkey Ham—Cured Turkey Thigh Meat' is misleading to a substantial number of consumers," *id.* at 68, the court permanently enjoined the Secretary from enforcing the regulation. The court refused, however, to enjoin him permanently from approving any turkey product label with "Turkey Ham" on it, noting that "proper inquiry and analysis" might in the future reveal that the label is not false or misleading. *Id.* at 70.

This court granted a stay of the injunction pending resolution of the merits on appeal.

## II.

 Judicial review of agency action requires great deference: a reviewing court is not entitled to substitute its own judgment for that of the agency, *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and must defer to the agency if its action has a rational basis in the administrative record. *See Rochester Telephone Corp. v. United States*, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939). Only a showing that the action was arbitrary and capricious will overcome the presumption of its validity. *See F.C.C. v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978).

The district court in this case failed to accord due deference to the Secretary's determination that the label "Turkey Ham" as qualified by the phrase "Cured Turkey Thigh Meat" would not mislead consumers. The Secretary followed proper administrative procedure, and his considered judgment, based on submitted comments, the Department's longstanding definition of "ham," survey information, and the historical usage of the "Turkey Ham" label, was that use of the qualified label would avoid the misleading character of the unqualified label. The district court, however, using its own definition of "ham" and implying that a survey of consumers with respect to the qualified label would be the only "reliable basis" for determining whether it is mis-

leading, impermissibly substituted its own judgment for that of the Secretary.

The Secretary's action, having a rational basis in the administrative record, is valid, *see National Pork Producers Council v. Bergland*, 631 F.2d 1353 (8th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1350, 67 L.Ed.2d 335 (1981), and the district court erred in concluding that the regulation was promulgated arbitrarily and capriciously. The order enjoining enforcement of 9 C.F.R. § 381.171 (1979) is therefore vacated, and the cause remanded to the district court for proceedings consistent with this opinion.

*VACATED AND REMANDED.*