CONAX FLORIDA
CORPORATION, Appellant

v.

UNITED STATES of America, et al.

No. 86–5544.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 26, 1986.

Decided July 24, 1987.

Barry E. Bretschneider, with whom Richard C. Spitzer, Washington, D.C., was on the brief for appellant.

Rebecca L. Ross, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief for appellees.

Before MIKVA, RUTH B. GINSBURG and BORK, Circuit Judges.

MIKVA, Circuit Judge:

This unusual appeal is a hybrid claim combining an action for breach of contract with a challenge to allegedly unlawful agency action. The dispute arises out of a contract between the United States Navy and appellant Conax Florida Corporation (Conax), under which Conax agreed to produce water-activated life-support equipment for the Navy's use. The contract limited the government's rights in certain of the data Conax was to provide in the course of performance; these data could not be used without Conax's consent except for the purpose of design evaluation. As part of its performance, Conax submitted a series of drawings that the Navy claimed were not protected under the contract's limited-rights provision and therefore could be released to Conax's competitors. Conax maintained that the drawings clearly fell within the contractual provision and protested the government's intended release of the information.

The parties first litigated their contractual dispute before the Navy's contracting officer, who agreed with the Navy's position. Conax's normal recourse at this point would have been to either the Armed Services Board of Contract Appeals (ASBCA) or the Claims Court. But neither of these tribunals can grant equitable relief, and, faced with the Navy's imminent disclosure of what Conax considered to be trade secrets, the corporation first sought an injunction in the United States District Court for the District of Columbia. That court, however, had no jurisdiction over the contract claim, so Conax reframed its claim to allege unlawful agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq. (APA). Specifically, Conax claimed that the disclosure by the Navy would constitute a violation of the Trade Secrets Act, 18 U.S.C. § 1905. The district court granted a preliminary injunction on the condition that Conax drop the parallel appeal of the contract claim Conax had by then filed in the ASBCA, which Conax agreed to do. The district court subsequently granted the government's motion for summary judgment on Conax's APA claim. Conax, now a loser on both battlegrounds, appeals the district court's order of summary judgment, arguing that the court employed the wrong standard and scope of review and reached a faulty decision on the merits.

We affirm the district court.

## I. BACKGROUND

In 1978, Conax approached the Navy with a proposal to manufacture a Sea Water Actuated Release System, or "SEAWARS," which would release a pilot's parachute harness upon contact with water. Conax's proposal led to a series of contracts with the Navy under which the company agreed to develop its basic design and produce modified SEAWARS systems for the Navy's use. One of these agreements—the "Long Beach contract"—figures most prominently in this dispute. The contract provided for delivery of SEAWARS in three phases. In Phase I, Conax was to submit a design of the system in accordance with its proposal. Phase II required Conax to develop the system further using the specifications approved under

Phase I. Phase III covered actual manufacture and delivery of the SEAWARS.

Conax negotiated a special clause in the Long Beach contract which provided that the government would have only limited rights in data and drawings submitted under contractual item AOOF, entitled "Drawings, Engineering & Associated Lists." The contract did not detail precisely what item AOOF comprises, and that issue is at the heart of the parties' controversy. However, the thrust of the limited-rights provision, it is fair to say, was to protect Conax from the government's release of the initial design of SEAWARS without abridging the government's rights in developments and modifications for which it would pay Conax in the course of performance. The contract specified that data and drawings submitted under item AOOF were to be marked by Conax with limited rights legends and that the government was not to use them for any purpose other than design evaluation without Conax's written consent.

The Long Beach contract also incorporated Defense Acquisition Regulation (DAR) 7–104.9(a), which gives the government unlimited rights in a list of specified data, including technical data resulting directly from performance of developmental or research work that is specified as an element of performance in the contract; in other words, the government had unlimited rights in data it paid Conax to generate. DAR 7–104.9(a) also gives the government a mechanism to challenge a contractor's proprietary markings that the government believes are improper, and it is this mechanism which launched the present litigation. Specifically, DAR 7–104.9(a) provides:

(d) Removal of Unauthorized Markings

Notwithstanding any provision of this contract concerning inspection and acceptance, the Government may correct, cancel, or ignore any marking not authorized by the terms of this contract on any technical data ... furnished hereunder, if:

·    ·    ·    ·    ·

(ii) the Contractor's response [to the government's inquiry] fails to substan-tiate ... the propriety of limited rights markings by clear and convincing evidence.

Conax commenced performance of the Long Beach contract, delivering a number of drawings for a baseline SEAWARS design. These drawings bore limited rights legends and referenced contract item AOOF. Conax noted on its invoice to the Navy that delivery of item AOOF and other items completed its performance of Phase I of the contract. Conax also noted on several shipping forms that it had sent item AOOF in letter transmittal of May 5, 1981. On August 26, 1981, the Navy signed an acceptance form for three items, including item AOOF, thereby signalling the completion of Phase I of the contract. Throughout Phases II and III of the contract, however, Conax continued to submit drawings referencing item AOOF and bearing limited rights legends. The Navy accepted these drawings without protest.

In June of 1983, as Conax was nearing completion of its work under the Long Beach contract, the Navy awarded the company another contract to produce SEAWARS—the "China Lake contract." That contract, which also incorporated DAR 7–104.9(a), essentially required Conax to deliver additional SEAWARS systems as developed under the Long Beach contract, although it also called for very minor revisions. Conax began to deliver the slightly revised drawings, once again affixing limited rights legends to them. The Navy at first continued to accept the drawings without protest, but in March of 1984, it notified Conax that it was challenging the limited rights legends. The letter gave Conax 60 days to justify the proprietary markings by clear and convincing evidence, as required under DAR 7–104.9(a).

After several extensions of time, Conax submitted evidence in support of its claim to the Navy's contracting officer, who under the Contract Disputes Act, 41 U.S.C. § 601 *et seq.* (1982) (CDA), first adjudicates claims by a contractor against the Navy. Conax's materials did not include the drawings from the Long Beach contract that Conax argued it had submitted under item

AOOF. Conax claimed that it no longer had these drawings, because it had been required to destroy superseded documents under a provision of the China Lake contract. Conax instead submitted, among its 29 exhibits, data transmittal records of the drawings that referred to item AOOF. Conax also submitted a 34–page letter, in which it argued that the government had only limited rights in all data the company had submitted referencing item AOOF of the Long Beach contract. Conax further maintained that the limitation on the government's rights carried over into drawings delivered under the China Lake contract, because those drawings were essentially unchanged from those delivered under the previous contract. Conax's letter did not suggest that the limitations on the government's rights applied only to severable portions of any of the drawings; rather, Conax insisted that the limitations applied to all data submitted under limited rights legends.

On August 15, 1985, the Navy's contracting officer issued his decision finding that Conax had failed to provide clear and convincing evidence of its right to place restrictive legends on the drawings. The officer interpreted the Long Beach contract as protecting Conax's rights in the SEA-WARS design as it existed at the beginning of the contract but granting the government unlimited rights in the system as developed. The officer found that item AOOF covered only the preliminary design drawings submitted during Phase I of the contract. He determined that data relating to modifications made during Phase II and Phase III were covered by another item, "Item AOOA." He therefore determined that any drawings Conax submitted to the Navy after August 26, 1981 (when the Navy signed the acceptance form for item AOOF) were covered by Item AOOA and not subject to the limited rights provision. Although Conax's transmittal forms for data submitted after August 26 referred to item AOOF, they also indicated that revisions had been made to the drawings. The officer interpreted these entries as showing that the forms had accompanied revised versions of the baseline drawings, *i.e.* item

AOOA submissions. The officer pointed out that if the drawings had not been submitted under item AOOA, Conax apparently would not have fulfilled its requirements under that item. The officer concluded, "[w]hile it is clear that Conax did develop at their own expense the basic concept on which the SEAWARS design is based[, t]here is no clear and convincing evidence that the design as depicted in the engineering drawings and associated list ... was developed entirely at private expense.... Based on this determination the legends will be canceled or removed from all technical data and competitive solicitations issued." Joint Appendix (J.A.) 68–69.

Under the CDA, Conax had the right to a *de novo* appeal of the contracting officer's determination before either the ASBCA or the Claims Court. This appellate route became substantially less attractive when the Navy informed the company that it would not adhere to its prior practice of delaying disclosure of the data until resolution of the appeal. The Navy's decision placed Conax in a quandry because neither the ASBCA nor the Claims Court could provide the relief that the company most keenly wanted—an injunction against disclosure. Conax therefore chose to seek equitable relief in the District Court for the District of Columbia. Under the CDA, however, that court could not exercise jurisdiction over Conax's contract claim. *See Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 893 n. 3 (D.C.Cir.1985). Consequently, Conax alleged that the Navy's disclosure of the drawings would violate the Trade Secrets Act, and thus would constitute unlawful agency action in violation of the APA. Thus reframed, Conax's claim could be heard in the district court. *See Megapulse, Inc. v. Lewis,* 672 F.2d 959, 969 (D.C.Cir.1982) (district court has jurisdiction to entertain nearly identical claim, because "[a]ppellant's position is ultimately based, not on breach of contract, but on an alleged governmental infringement of property rights and violation of the Trade Secrets Act").

Conax's cross-over tactic paid an early dividend when the district court granted its

request for a preliminary injunction precluding the Navy from removing the restrictive rights legends. As a condition for granting the injunction, however, the court required Conax to dismiss with prejudice its appeal before the ASBCA. *See Conax Corp. v. United States,* 625 F.Supp. 1324 (D.D.C.1985). In attaching the condition, the court relied on the previous decision of this court that a court may not grant preliminary relief under a claim for which another court—in this case the Federal Circuit—has exclusive appellate jurisdiction. *See Telecommunications Research & Action Center v. FCC,* 750 F.2d 70 (D.C.Cir. 1984). Because the claim before the district court was different from the contract action over which the Federal Circuit had appellate jurisdiction, Conax at this point might have challenged the condition in an interlocutory appeal to this court. The corporation did not do so, however; it instead accepted the district court's condition, dropping its ASBCA appeal, and the parties proceeded to litigate the claim under the APA.

The government moved for summary judgment, which Conax resisted, reiterating its claim that the controversial drawings in their entirety were provided under data item AOOF and thus fell within the limited rights provision. Conax also argued that the district court's review of the contracting officer's decision should be *de novo.* On July 30, 1985, the district court granted the government's motion for summary judgment, vacating the preliminary injunction in the process. *Conax Corp. v. United States,* 641 F.Supp. 408 (D.D.C. 1986). The court rejected Conax's argument that it was entitled to *de novo* review of whether the government had limited rights in the data and instead undertook a deferential review of the contracting officer's prior decision based on the administrative record. The court then held that the contracting officer reasonably had determined that the drawings at issue should be considered submissions under item AOOA, not item AOOF. Finally, the court found that the government's prior acceptance of the drawings did not estop it from

later challenging the limited rights legends. This appeal followed.

## II. DISCUSSION

### A. *Scope and Standard of Review*

Conax gained jurisdiction in the district court by alleging that the Navy's disclosure of the data Conax submitted would violate the Trade Secrets Act. Thus, the agency action that we are called upon to review is the Navy's decision to disclose drawings of SEAWARS. *See Megapulse,* 672 F.2d at 966. Such a decision would be unlawful under the Trade Secrets Act, and therefore remediable under the APA, only if the limited rights provision applies to the drawings in question; if the drawings belong to the government without limitation, Conax has no trade secrets to be protected. Following the dispute resolution mechanism provided in their contract, the parties litigated this threshold question before the Navy's contracting officer, who determined that the government had unlimited rights in the data because Conax had failed to produce clear and convincing evidence to the contrary. Unless we have cause to reverse that finding, Conax's Trade Secrets Act claim must fail. Thus, while technically we review the Navy's action in seeking to disclose the data, as a practical matter it is the contracting officer's decision that is immediately before us. *See Megapulse,* 672 F.2d at 968 (court may review contract issue in context of action under Trade Secrets Act, even though it would not have jurisdiction to decide the issue if it were raised directly).

Under the APA, we may set aside the contracting officer's finding only if we determine it is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). Moreover, we make that determination based on the evidence the parties provided to the contracting officer; our concern is not whether the officer might have reached a different decision had he considered additional evidence, but only whether the decision he did reach, based on the evidence that was before him, was unreasonable. Conax protests that it has a statutory right to a *de novo* review of the contracting officer's decision. Co-

nax is right. The Contract Disputes Act does provide for *de novo* review. *See* 41 U.S.C. §§ 605(a), 606. But it provides for that review in only two forums: a board of contract appeals or the Claims Court, neither of which can grant the equitable relief Conax needed and continues to need. Conax now asks us to splice together the CDA's provision for *de novo* review of its contract claim with the substantive provisions of its Trade Secrets Act claim. We lack authority to engage in such recombinant engineering of congressionally created causes of action.

Conax's reason for desiring an undeferential standard of review is obvious. The reason it seeks a *de novo scope* of review—*i.e.* not confined to the record it established before the contracting officer—is that the company believes that the administrative record is patchy and insufficient to do justice to its claim. Conax explains that because it assumed it had a right of *de novo* appeal before the ASBCA, it did not bother to develop a complete record below. Conax attempts to rely on an exception to the general rule of review on the administrative record. Under that exception, *de novo* review of administrative action may be had where the agency action is adjudicatory in nature and the fact finding procedures in the agency proceeding are inadequate. *See Environmental Defense Fund v. Costle,* 657 F.2d 275, 288 (D.C.Cir.1981). This exception is unavailing in this case because the fact finding procedures employed by the agency were by no means inadequate. Indeed, there were absolutely no restrictions on the amount or type of evidence that Conax was permitted to submit to the contracting officer. That Conax chose to restrict itself, relying on an assumption that turned out to be unwarranted, is an imprudence for which there is no judicial remedy.

Confined as it is to a scope of review on the administrative record, and challenging an agency finding pursuant to a contract that itself imposed an additional burden of proof, Conax has an especially steep hill to climb on appeal: it must show that it was arbitrary and capricious for the contracting officer to have determined that Conax failed to present clear and convincing evidence of its right to affix the limited rights legends.

## B. *Reasonableness of the Contracting Officer's Decision*

■ As noted, the contracting officer found that Conax had failed to provide clear and convincing evidence of its right to affix the limited rights legends. The officer determined that the drawings at issue fell within item AOOA of the Long Beach contract, not item AOOF. He therefore concluded that the government had unlimited rights in the data, because the contractual limitation on the government's rights applied only to item AOOF submissions. In challenging this finding, Conax relies heavily on the use of the word "provided" in the contract's limited rights provision. *See* J.A. 887A ("For ... Item AOOF, all drawings and data provided are to be indicated as limited rights data and furnished only for design evaluations purposes by the Government.") Conax's position appears to be that any data it provided under a heading of "AOOF" automatically became subject to the limited rights provision. This position is clearly untenable. The government's ability under the contract to challenge limited rights markings would be meaningless if Conax could unilaterally determine the contents of item AOOF by simply writing "AOOF" on the drawings and asserting it was submitting the data under that item.

■ The structure of the contract between the parties, and the parties' course of performance, lends ample support to the contracting officer's conclusion that the drawings at issue did not fall within item AOOF. The contract called for performance in three stages, the first of which was to be completed in 180 days. Conax wrote on several shipping forms that it had submitted item AOOF in May 1981 and also noted on an invoice that delivery of data item AOOF completed the corporation's obligations under Phase I. *See* J.A. 1313. It is reasonable to infer from these facts that item AOOF encompassed drawings and other preliminary data that provided the

baseline SEAWARS design. This conclusion is bolstered by the limited rights provision at issue in this case, which restricts the government's use of item AOOF to "design evaluation purposes." Design evaluation most logically falls under the contract's first phase, in which Conax was to document its initial SEAWARS design. Revisions to the baseline design, which would be incorporated according to the government's specifications during the course of performance, seem by contrast to be encompassed by item AOOA—"Engineering Change Proposals and Requests for Deviations and Waivers." Moreover, as the contracting officer observed, if the later drawings did not satisfy item AOOA, it appears from the administrative record that the item was not otherwise satisfied. Thus, the contracting officer's decision to treat the revised drawings at issue as part of item AOOA, and therefore not subject to the limited rights provision, was hardly arbitrary; it was well-reasoned and amply supported by the contract and the course of performance. More importantly, Conax offered no substantial evidence, much less clear and convincing evidence, in support of its position. Conax's chief evidentiary support was transmittal records that indicated the company referenced item AOOF when it submitted the drawings, but as we have noted, Conax's own labelling does not itself provide limited rights protection. In short, we find that the contracting officer reasonably found that Conax failed to present clear and convincing evidence of its right to affix the limited rights legends.

On appeal, Conax for the first time argues that even if the drawings were modified versions of those submitted under item AOOF, the company still should retain some rights in the drawings. Conax implicitly concedes that the government may have unlimited rights in the modifications that were made during the course of performance; the company argues, however, that limited rights can inhere in parts of drawings. Conax urges that it should not lose all protection for the core design it developed over many years and at considerable expense merely because the drawings include some data in which the government

has unlimited rights. Conax therefore contends that the contracting officer and the district court committed legal error by not undertaking a separability analysis to determine which parts of which drawings merited limited rights protection.

It is unclear how Conax would have fared with this argument had it pursued it from the outset. On the one hand, it is arguable that the contract contemplated that the government would have unlimited rights in the completed SEAWARS design. The government paid Conax over $600,000 to develop SEAWARS and may reasonably have expected that it would have unlimited rights in the final product. On the other hand, it appears as if the limited rights provision was intended to protect Conax's rights in the portions of the final design that it had generated before it approached the Navy. Had Conax identified those portions before the contracting officer, it might have been able to prevent the government from distributing these data to the company's competitors. The ASBCA adopted such an approach in *Bell Helicopter-Textron*, 85–3 BCA para. 18,415 (Sept. 23, 1985). In *Bell Helicopter-Textron*, a subcontractor asserted limited rights protection in components of a launcher it had developed under a government contract. The ASBCA recognized that limited rights under a contract can inhere in portions of a modified drawing, *id.*, at 92, 416, and remanded the case to the parties with instructions to negotiate the rights to the drawings or separable portions thereof. *Id.*, at 92, 435. This case thus demonstrates that Conax's separability argument has a firm basis in the law.

The theoretical appeal of a separability argument, however, does not alter the fact that Conax failed to present clear and convincing evidence of its right to affix the limited rights legends to the contracting officer. In its argument before the officer, Conax energetically pursued an all-or-nothing theory. It contended that the drawings had been submitted under item AOOF and that the limited rights provision thus applied to the drawings in their entirety. *See, e.g.* Letter to Contracting Officer Man-

son, J.A. 716–49 at 741 ("[T]he special provision ... applies to all data delivered, submitted or provided by Conax pursuant to Data Item AOOF, regardless of when they were submitted."). Conax relied exclusively on this approach notwithstanding that the government, in notifying Conax of its challenge to its rights, expressly reminded the company "that the proprietary material on each page must be clearly identified unless the contractor is claiming everything on the page as proprietary." J.A. at 1292. It was not the responsibility of the contracting officer to undertake a separability analysis; Conax had the burden under its contract to make out its case with clear and convincing evidence. This burden required Conax to propound the legal theory on which it relied with reasonable coherence and also, if it wanted to pursue a separability analysis, to identify with clear and convincing evidence what portions of the drawings retained limited rights. *Cf.* C.J.S., *Pleading* § 92, at 229 n. 44 (1951) ("If a complaint proceeds on a definite, clear, and certain theory, it will not support or permit of another theory, merely because it contains isolated or subsidiary statements consistent therewith.").

■ Moreover, Conax adopted the same all-or-nothing approach in the district court. In its opposition to the government's motion for summary judgment, for example, Conax's position was that "the drawings at issue were 'provided' under Data Item AOOF and are thus within the limited rights provided by the special clause." J.A. at 675. This court normally will not entertain on appeal legal theories not asserted at the district court level. *See District of Columbia v. Air Florida,* 750 F.2d 1077, 1084 (D.C.Cir.1984). We have no reason to depart from this general rule in this case. We therefore reject Conax's argument that prior forums erroneously failed to undertake a separability analysis. Whatever the merits of the separability argument, Conax cannot raise it for the first time in this forum.

## C. *Estoppel*

■ Conax's final claim is that having accepted the drawings and made final pay-

ment under the Long Beach contract, the government is estopped from now challenging Conax's right to affix the limited rights legends. As the company observes, this claim is first a matter of contract interpretation: was the government barred under the terms of the Long Beach contract from challenging limited rights legends after it had made final payment? The contracting officer determined it was not. This conclusion was reasonable. First, we note, as did the district court, that nothing in the record suggests the affirmative misconduct by the Navy that the Supreme Court has indicated is a prerequisite to a finding of estoppel against the United States. *See INS v. Miranda,* 459 U.S. 14, 17, 103 S.Ct. 281, 282–83, 74 L.Ed.2d 12 (1982). Second, the contract by its terms defeats Conax's estoppel claim. DAR 7–104.9(a) provided that the government could challenge any marking "notwithstanding any provision of this contract concerning inspection and acceptance." This provision anticipates challenges to proprietary markings for at least a reasonable time after acceptance of the data. *See Baifield Industries,* 75–1 BCA para. 11,245, at p. 53,526 (April 30, 1975) ("The absence of a time limit is not a bar to action [by the government under a government contract,] it being well recognized that where no time is specified, action must be taken within a reasonable time."). The government's challenge in this case came less than a year after performance on the contract was completed and during the course of an ongoing series of contracts between the two parties involving SEA-WARS. It is reasonable to conclude that such a challenge was authorized under the contract. The contracting officer therefore was not arbitrary and capricious in his determination that the government was not estopped from challenging Conax's assertion of limited rights. *See also Williams International Corp. v. Lehman,* No. 84–1122 (D.D.C. Nov. 6, 1984) [Available on WESTLAW, DCT database] (finding no estoppel under similar facts).

## III. CONCLUSION

Conax is really seeking relief from the results of its own decisions. During the

course of this litigation, Conax made some strategic choices—to argue that the government had only limited rights in the entirety of the drawings, to seek relief in district court, to drop its appeal before the ASBCA—that now appear improvident. The courts normally are not available to relieve parties from the operation of their own litigation strategies. We find no reason to deviate from that salutary policy. The judgment of the district court is affirmed.

This court's previous order requiring the government not to release the drawings at issue during the pendency of this appeal shall be dissolved with the issuance of the mandate in this case.

*It is so ordered.*