### ATLANTIC RESEARCH CORPORATION, Plaintiff,

v.

### DEPARTMENT OF the AIR FORCE, Defendant,

and

### GTE Government Systems Corporation, Defendant–Intervenor.

### Civ. A. No. 88–1164–A.

United States District Court, E.D. Virginia, Alexandria Division.

March 28, 1989.

---

C. Torrence Armstrong and Thomas F. Farrell, McGuire, Woods, Battle & Boothe, Alexandria, Va., for plaintiff.

Dennis Szybala, Asst. U.S. Atty., and Craig C. Reilly, Alexandria, Va., Janice M. Bellucci, Office of Gen. Counsel, U.S. Dept. of Air Force, Pentagon, Washington, D.C., for defendants.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the court on plaintiff's, defendant's and defendant-intervenor's motions for summary judgment. It appears that there are no material issues of fact which would preclude disposition of the claims prior to trial.

Plaintiff initiated this action seeking judicial review of defendant Department of the Air Force's ("Air Force") award of the Red Telephone Switching Subsystem ("RTSS") contract to GTE, the defendant-intervenor. The RTSS will provide a secure communications network for use by the President of the United States, the Joint Chiefs of Staff, and other high-ranking military officials during times of war or crisis. The solicitation requested fixed-price offers for the purchase, installation, and testing of red switches over a seven year period as well as maintenance and logistics services for up to nineteen years. The solicitation listed four criteria without providing numerical weight by which the offerors' proposals would be evaluated. The solicitation stated that "technical" merit was most important, followed by "management" and "logistics," with "cost" being the least important factor. The solicitation also stated that risk would be assessed and that the contractor would be selected in accordance with Air Force Regulation ("AFR") 70–15.

In May, June, and early July of 1988, the Source Selection Evaluation Board ("SSEB") evaluated the proposals, issued two sets of Clarification Requests and Deficiency Reports, and held face-to-face negotiations. On July 18, 1988, the contracting officer asked all three offerors, ARC, GTE and Electrospace Systems, Inc. ("ESI") (not a party to this case), to submit their best and final offers ("BAFOs") by July 28, 1988. The BAFOs were evaluated, and on August 10, 1988, the SSEB presented the results to the Source Selection Advisory Council ("SSAC"). The SSAC reviewed the evaluations, presenting its analysis to the Source Selection Authority, Assistant Secretary John J. Welch, Jr., on August 16, 1988. Mr. Welch's decision to award the RTSS contract to GTE was announced on August 26, 1988.

Plaintiff alleges five points of error in the Air Force's selection process. The first concerns the solicitation requirements for black interface capability. This feature would permit secured lines to access unsecured lines. Plaintiff proffered and the Air Force accepted an explanation of how it would fully comply with Engineering Performance Specifications ("EPS") ¶ 3.2.3.3, while GTE responded by stating that, in its opinion, the EPS did not require extension of full black access. The plaintiff contends this was a vague specification and subsequent acceptance of a much more limited interpretation of that requirement gave GTE a competitive advantage in violation of FAR §§ 10.001 and 15.402(a).

The Air Force, however, intended a broad requirement of black interface capability and did not specify the method of achieving such capability. This was done so as to encourage contractors to utilize their technical expertise in proposing different solutions to the government's need. The requirement was not relaxed for any offeror. Both ARC and GTE received "acceptable" ratings in the technical area.

The second point of contention concerns the requirement that the console operator be able to monitor or query the lines. ARC asked the Air Force at the preproposal conference whether the consoles were to provide monitoring of black lines as well. The Air Force indicated that the console must have the ability to monitor both red and black lines. Plaintiff alleges that the government did not require the same capability from GTE and that this constituted another relaxation of specification requirements.

Similar to the black interface capability, the government in this instance stated its requirement for monitoring capabilities of red switches and for black interface capability (EPS ¶¶ 3.2.3.7.1 and 3.2.3.7.2) without specifying the method of compliance. ARC offered a black switch, while GTE's proposal utilized a black key system. Both were found "acceptable" and "low risk."

Third, plaintiff alleges that the Air Force violated FAR 15.606(a) and (c) in the negotiation of cable distance between the switch and the telephone or console. During negotiations, the Air Force discussed cable length with GTE and ESI, but not ARC. GTE indicated that it could go beyond the distance asked for in EPS ¶¶ 3.2.3.1.11 and 3.2.3.8.4. ESI said it would offer additional distance if the government agreed to lower the cable guage. The Air Force relaxed the requirement for ESI but did not communicate this fact to other offerors. In the proposal, ARC represented that its telephones could operate beyond the minimum distance; however, the government never attempted to discuss the extra capacity ARC was willing offer.

Plaintiff cannot show any prejudice from the relaxation of the cable guage requirement for ESI, since ESI was not the contract awardee. Regarding cable length, ARC made an assertion that its equipment could operate beyond the minimum distance without providing any data to support the statement, while GTE furnished data that established the greater operating distances.

■ The government is not obligated to negotiate every proposal item which received less than the maximum score. *See Range Technical Services*, B–231968, 88–2 CPD ¶ 474 at 5–6; *Bank Street College of Education*, B–213209, 84–1 CPD ¶ 607 at 14. The procuring agency is required to

conduct "meaningful" discussions. *Physicon, Inc.,* B–219967.2, 85–2 CPD ¶ 723 at 3. A "meaningful" discussion advises the offeror of any deficiencies in its proposal so that the offeror has an opportunity to satisfy the government's requirements. FAR § 15.610(c)(2). Agencies are not obligated to discuss areas in which an offeror's proposal is acceptable but inferior to that of another offeror. *BMY, A Division of Harsco Corp. v. United States,* 693 F.Supp. 1232, 1239 (D.D.C.1988) (duty to conduct meaningful discussions is not a mandate to reveal every imperfection); *Prison Health Services,* B–215613.2, 84–2 CPD ¶ 643 at 4.

■ The fourth area of dispute concerns an increase in the amount of maintenance and logistic support. The model contracts sent to the offerors along with the request for best and final offers included revised contract line item numbers ("CLINs") for the pricing of contractor repair of the switches. This change greatly increased the maintenance aspect of the procurement. The revision was necessary because the original CLIN was not consistent with Section M of the solicitation.

In addition to the change in maintenance requirements, a clerical error caused the number of maintenance hours in ARC's model contract to be understated. During a review of ARC's best and final offer, the Air Force discovered its mistake, promptly notified ARC by telephone, and requested that ARC provide revised pricing based on the correct maintenance hours. Wanting to do more than merely revise the pricing, ARC sought permission to modify the technical portion of its proposal. The government denied this request. ARC could have protested the denial of its request at the General Accounting Office but for whatever reason did not choose to do so.

The Air Force did not act improperly by changing the maintenance requirements late in the procurement process. FAR § 15.606 permits changes even after the receipt of proposals. Plaintiff has failed to demonstrate any prejudice from the modification since it was able to meet the timetable for submission of BAFOs and revised BAFOs. ARC was promptly notified of the

clerical error and given an opportunity to adjust the pricing directly affected by that mistake.

The fifth error involves revisions to the Source Selection Decision document made by Assistant Secretary Welch's staff at his request. Plaintiff takes issue with the statement that GTE's system "is supported by proven consoles and crypto interfaces, both of which are currently in production." Plaintiff claims this is inaccurate because the existing equipment would have to be modified to function under the red switch system, just as would ARC's equipment.

The Secretary's decision is not predicated upon an inaccuracy. GTE's proposal would require minor modifications to certain existing equipment. ARC's proposal on the other hand would require major modifications to existing equipment as well as the development and design of nonexisting equipment.

■ Judicial review of agency contract award decisions is based on the Administrative Procedures Act ("APA"), 5 U.S.C. § 704 *et seq. Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970). The reviewing court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In order to prevail, the losing offeror must show by clear and convincing evidence that there was no rational basis for the agency's decision or that the procurement involved a clear and prejudicial violation of the applicable statutes or regulations. *Conax Florida Corporation v. United States,* 824 F.2d 1124, 1128 (D.C. Cir.1987); *Smith and Wesson v. United States,* 782 F.2d 1074, 1078 (1st Cir.1986); *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973).

■ There is a rational basis for the Secretary's selection of GTE. The Source Selection Decision makes repeated reference to the low risk rating received by the GTE proposal. The reduced risk is attributable in part to the relatively simple modifications required on existing equipment, GTE's limited use of subcontractors, its

908

experienced managers, and its history of past performance. ARC contends that discussions were not meaningful because the Air Force did not disclose its risk assessment; however, *Ford Aerospace & Communications Corporation*, B–200672, 80–2 CPD ¶ 439 at 20–22, makes it clear that the government is not obligated to inform offerors of its risk analysis.

The Assistant Secretary specifically noted the nine percent price difference and concluded that this was offset by the superior characteristics of GTE's system. Cost was the least important of the evaluation criteria listed in the solicitation. Considering that all offerors were informed of this fact and in light of the important and sensitive nature of the product to be purchased, the Secretary's selection of a higher priced proposal does not lack a rational basis. The Comptroller General has repeatedly held that an agency may rationally award a contract to the higher-priced, technically superior proposal. *See Prison Health Services, Inc.*, B–215613.2, 84–2 CPD ¶ 643 at 3; *Unidynamics/St. Louis, Inc.*, B–232295 (Comp.Gen. Dec. 21, 1988).

In a disappointed bidder case, the court's review is limited. The court is not entitled to substitute its own judgment, but must defer to the agency provided there is a rational basis for the agency's action. *American Meat Institute v. United States Department of Agriculture*, 646 F.2d 125, 127 (4th Cir.1981); *BMY, A Division of Harsco Corp. v. United States*, 693 F.Supp. at 1238. While ARC may disagree with the Air Force's judgment, ARC has failed to provide clear and convincing evidence that the selection was arbitrary and capricious. The decision of Assistant Secretary Welch neither violated the applicable statutes and regulations nor lacked a rational basis. GTE's proposal was chosen because of technical expertise and low risk assessment. The evaluation of the SSEB and the analysis of the SSAC amply support both justifications for award.

The plaintiff's motion for summary judgment is denied. The defendant's and defendant-intervenor's motions for summary judgment are granted. An appropriate order shall issue.