**BELLSOUTH TELECOMMUNICATIONS, INC.,**
Plaintiff,

v.

**UNITED STATES of America,
et al., Defendants.**

No. 3:95–CV–0306.

United States District Court,
E.D. Tennessee.

Sept. 19, 1996.

W. Clark Meredith, Flitcroft & Normand, Oak Ridge, TN, for plaintiff.

John T. Buckingham, U.S. Department of Justice, Office of U.S. Attorney, Knoxville, TN; Edwin H. Rayson, Jr., and William P.

Snyder, Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, TN; G. Wilson Horde, and Ann M. Ward, Lockheed Martin Energy Systems, Inc., Oak Ridge, TN; Thomas A. Williams, and F. Scott LeRoy, Leitner, Williams, Dooley and Napolitan, Chattanooga, TN; Celeste Huffman Herbert, and Bernard E. Bernstein, Bernstein, Stair &; McAdams, Knoxville, TN, for defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

This civil action is before the court for consideration of several motions which address directly or indirectly the issue whether the plaintiff may sue the United States in this court for any relief in this civil action. The court heard oral argument on the various defendants' motions on Friday, September 13, 1996, and is now prepared to rule on the motions.

### I

To examine the background out of which this litigation arises, it is necessary to look not only to the plaintiff's complaint [doc. 1] as amended [doc. 47], but also to other materials in the court's file, including especially the exhibits to the brief [doc. 30] filed by the defendants Martin Marietta Energy Systems, Inc.[1] (Energy Systems), and J.W. Hatfield (Hatfield) in support of their motion [doc. 29] to dismiss the plaintiff's claims against them in this civil action. The plaintiff BellSouth Telecommunications, Inc., doing business as South Central Bell Telephone Company[2] (BellSouth), entered into a contract in 1977 with the United States (specifically, with the Energy Research and Development Administration (ERDA), the predecessor agency of the Department of Energy (DOE)) to install and provide specified telecommunications facilities and services (the ERDA Telecommunications System). This 1977 contract contained a government contract disputes article, which required

the submission of "any dispute concerning a question of fact arising under this contract which is not disposed of by agreement" to a contracting officer in the first instance, followed by appeal to the Administrator of ERDA.

In 1979, BellSouth and DOE entered into a memorandum of understanding concerning "joint underground conduit system occupancy" at DOE's three Oak Ridge sites, Y–12, X–10 (also known as Oak Ridge National Laboratory or ORNL), and K–25 (also known as The Oak Ridge Gaseous Diffusion Plant). The section of this memorandum of understanding entitled "*GENERAL* " gives an idea of the subject matter of the memorandum:

This memorandum of understanding covers the installation and maintenance of cables by (DOE) and/or its assigned agents in the underground conduit and manholes installed by [BellSouth] within the D.O.E. Y–12 area, Oak Ridge National Laboratory (X–10) and The Oak Ridge Gaseous Diffusion Plant (K–25) at Oak Ridge, Tennessee.

The conduit systems installed in these plant areas contain varying numbers of ducts reserved for use by the D.O.E. and [BellSouth]. The ducts reserved for each party share manholes provided for access to the conduit system....

It is the intent of this memorandum to outline an understanding between D.O.E. and [BellSouth] relative to the occupancy of the ducts provided for use by D.O.E. in the joint system.

In February 1987, the United States, BellSouth, and Energy Systems entered into an assignment and novation agreement, under which DOE assigned its 1977 contract with BellSouth to Energy Systems, and BellSouth and Energy Systems agreed to modify the contract to classify it as a subcontract, in light of the fact that Energy Systems had entered into the principal contract to manage and operate most of DOE's facilities in Oak Ridge, Tennessee. It was agreed in this

---

1. The successor in interest to Martin Marietta Energy Systems, Inc., is Lockheed Martin Energy Systems, Inc. No party has moved under Fed.R.Civ.P. 25(c) to substitute the latter for the former as a party defendant in this civil action.

2. The plaintiff states that it, BellSouth, is the successor by merger to South Central Bell Telephone Company.

assignment and novation agreement that "[t]he rights and obligations of [BellSouth] under [the contract] are in no way altered by this assignment except for the substitution of Energy Systems for DOE as party to the contract." This was followed, in March 1987, by supplemental agreement no. 1 to the subcontract, which added a *TITLE AND ADMINISTRATION* paragraph which reads,

> It is understood and agreed that this subcontract is entered into by the Company for and on behalf of the Government; that title to all supplies furnished hereunder by the Seller shall pass directly from the Seller to the Government, as purchaser, at the point of delivery; that the Company is authorized to and will make payment hereunder from Government funds advanced and agreed to be advanced to it by DOE, and not from its own assets, and administer this subcontract in other respects for DOE, unless specifically provided for herein; that administration of this subcontract may be transferred from the Company to DOE or its designee, and in case of such transfer and notice thereof to the Seller, the Company shall have no further responsibilities hereunder; and that nothing herein shall preclude liability of the government for any payment properly due hereunder if for any reason such payment is not made by the Company from such Government funds.

In 1989, according to the affidavit of Nick Alvaro of BellSouth, attached to the original complaint filed in this civil action, "DOE–Martin Marietta" requested BellSouth to deliver a copy of the drawings and plats of the telecommunications system in Oak Ridge and the plant site areas. The plaintiff provided these drawings and plats, marked "Not for use or disclosure outside the Bell system except by written agreement." The plaintiff alleges that "DOE–Martin Marietta" made these drawings and plats available to the defendant U.S. West Communications Federal Services, Inc. (U.S. West) to use "for the purpose of installing a new telecommunications system for DOE–Martin Marietta to replace South Central Bell's telecommunications system."

Energy Systems and BellSouth eventually agreed to terminate the subcontract derived from the 1977 contract in its entirety, effective April 1, 1990, and at no cost to Energy Systems or the United States. Energy Systems and BellSouth entered into a separate subcontract under which BellSouth agreed to provide ESSX service at DOE's Oak Ridge facilities for the period from April 1, 1990, through March 31, 1995. According to the United States in its initial brief filed in this civil action [doc. 19 at 5],

> Modification G to Subcontract No. 63K–XG367V ..., dated April 1, 1992, extended the period of performance of that subcontract until September 30, 1996, with options for further extension to March 31, 1998. Subcontract No. 63K–XG367V, with its extension, is the contract which presently represents the agreement between [BellSouth] and Energy Systems regarding telecommunications services and facilities at the DOE Oak Ridge Operations facilities.

There is no dispute concerning these contracting facts in this civil action.

To understand why BellSouth ended up in this litigation with both the United States and Energy Systems, it is necessary to consider some of the factual allegations in BellSouth's amended complaint, at 4–6:

> South Central Bell has, for over 40 years, installed, maintained, and provided telecommunications facilities and services for use by DOE and its contractors at the Oak Ridge Operations Offices in Anderson and Ridge Counties, Tennessee. Miles of underground ducts, conduit and cables belonging to South Central Bell have been constructed and upgraded by South Central Bell over these many years and integrated into the entire South Central Bell system servicing the residential and commercial communities of Oak Ridge and Knoxville, Tennessee....

> Starting in 1994 and continuing to date, the Government, through DOE, has placed U.S. West as a contractor on site to install and administer a telecommunications system within the governmental facility at Oak Ridge....

In late June or early July, 1994, South Central Bell learned... that U.S. West and/or Tel–Tec [US West's subcontractor] intended to access and intrude upon South Central Bell's telecommunications equipment and cables, without obtaining prior consent from South Central Bell.

Once BellSouth learned of this intention to "access and intrude upon" the telecommunications equipment and cables on and under DOE's three Oak Ridge sites, various communications traveled among the interested parties. On July 5, 1994, BellSouth advised U.S. West that BellSouth had learned that U.S. West intended to test existing telephone cables at the Oak Ridge sites to determine their suitability for purchase, and stated that certain cables on the sites were the property of BellSouth, "and unauthorized parties are not allowed to access the working or idle cables in any way." There followed correspondence between Energy Systems and BellSouth in which these parties disputed ownership of certain equipment and facilities installed on the Oak Ridge sites as part of the telecommunications system, with Energy Systems asserting that "the original contract... and subsequent novation, clearly state that title to property vests with the government when used in performance of the contract or when [Energy Systems] pays for it, whichever occurs first."

## II

In this civil action, the plaintiff states multiple theories of recovery. BellSouth pleads causes of action under Tennessee law for wrongful trespass and/or conversion against the defendants U.S. West and Tel–Tec, Inc. (Tel–Tec), U.S. West's subcontractor. Against these defendants and the defendant Energy Systems, BellSouth states a cause of action under Tennessee law, Tennessee Code Annotated § 47–50–109, for tortious interference with its contracts with some of its other customers, arising out of alleged interference with its maintenance of cables and other facilities on and under the three DOE Oak Ridge sites, and so prays for treble damages under this Tennessee statute.

BellSouth states that the United States, acting through DOE, has assisted these other defendants in committing wrongful trespass, conversion, and tortious interference with contracts, and that the United States is therefore subject to liability under the Federal Tort Claims Act, as amended, 28 U.S.C.A. ch. 171 and § 1346(b). The plaintiff alleges also that the United States has committed a taking of BellSouth's property, by denying the plaintiff access to its tangible property on the Oak Ridge sites, by misappropriating for the benefit of the plaintiff's competitor the confidential and proprietary information in the drawings and plats which BellSouth copied at DOE's request, and by assisting U.S. West and Tel–Tec in trespassing upon the plaintiff's property and converting it. BellSouth alleges that by asserting ownership of BellSouth's tangible property, and by permitting U.S. West to engage in unauthorized "mapping" of the telecommunications system at the Oak Ridge sites, the United States has rendered itself liable for damages for inverse condemnation.[3]

■ The plaintiff pleads one or more violations of the Trade Secrets Act, 18 U.S.C.A. § 1905, arising out of the disclosure of the copied drawings and plats, and arising also out of allowing U.S. West to "map" the existing telecommunications system. By itself, this statute, which defines a violation of federal criminal law and specifies the punishment for it, does not create a private right of action to enjoin disclosure in violation of the statute. *Chrysler Corporation v. Brown*, 441 U.S. 281, 316–17, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

For jurisdiction of the subject matter of this civil action, BellSouth relies on 28 U.S.C.A. § 1332 (diversity of citizenship), 28 U.S.C.A. §§ 2201 and 2202 (the Declaratory Judgment Act, as amended), and 28 U.S.C.A. § 1346, apparently referring to § 1346(b), the jurisdictional provision of the Federal

---

**3.** The court does not read BellSouth's complaint to state a cause of action for an unconstitutional taking, or for inverse condemnation, against any party defendant other than the United States. U.S. CONST. Amend. V, which prohibits a taking of property without due process of law, and which provides that private property may not be taken for public use without just compensation, clearly applies to the government, not to private entities.

Tort Claims Act, as amended. The plaintiff pleads jurisdiction of its claim for an unconstitutional taking of its property without just compensation, and therefore for violation of its rights under U.S. CONST. Amend. V, as arising under federal law, 28 U.S.C.A. § 1331. The plaintiff refers also to the supplemental jurisdiction statute, 28 U.S.C.A. § 1367.

The plaintiff also relies on 42 U.S.C.A. § 7192, which provides for judicial review by the district courts of the United States of agency action undertaken by DOE. The plaintiff did not plead in its complaint any agency action on the part of DOE in the nature of a rule, regulation, or order. In a similar vein, the plaintiff states in its amended complaint that "this matter is properly before this Court pursuant to 5 USC § 702 in that this Amended Complaint sets forth allegations detailing the legal wrongs suffered by Plaintiff due to agency actions within the meaning of 18 USC § 1905 and the other statutes cited herein." Section 10(a) of the Administrative Procedure Act (APA), as amended, 5 U.S.C.A. § 702, provides a vehicle for judicial review of agency action which allegedly violates the Trade Secrets Act. *Chrysler Corporation v. Brown, supra,* 441 U.S. at 317–19. "Jurisdiction to review agency action under the APA is found in 28 U.S.C. § 1331." *Id.* at 317 n. 47 (citation omitted).

In the jurisdictional paragraph of its complaint, BellSouth states also, "Jurisdiction is further before this Court... as a claim for damages under ... 28 USC § 1491." Section 1491(a)(1) invests the United States Court of Federal Claims, not this court, with jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages not sounding in tort." In § 1491(a)(2), it is provided,

The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, *rights in tangible or intangible property,* compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

(Emphasis added.)

In its prayer for relief, BellSouth asks for declaratory and injunctive relief. It also prays for significant money damages, and for treble damages against Energy Systems, U.S. West, and Tel–Tec under the Tennessee statute concerning tortious interference with contractual rights.

### III

Before the court are the motion to dismiss filed by the defendants United States, James C. Hall (Hall), and Connie Hinton (Hinton) (sued in their capacities as DOE officers or employees) [doc. 18], the motions to dismiss or for a stay of proceedings filed by the defendants U.S. West and Tel–Tec [docs. 20 and 24], and the motion to dismiss filed by the defendants Energy Systems and Hatfield [doc. 29]. The parties have fully briefed the issues presented.[4] Having considered the parties, written and oral arguments, the court makes the following determinations.

■ The central issues in this litigation are the ownership of certain tangible property located on and under DOE's three Oak Ridge sites, and the ownership of the drawings and plats of the telecommunications system at these sites. These issues can only be resolved by reference to the contractual relationship between BellSouth and the United States. The court agrees with the characterization of this litigation by Jeffrey R. Burgan,

---

4. The defendants Energy Systems and Hatfield also filed a motion [doc. 49] to dismiss the plaintiff's complaint as amended. The court will consider this motion, and will treat all of the pending motions as directed at the amended complaint. Counsel for all parties so treated the motions at oral argument. The amendment of the complaint did not so alter the plaintiff's allegations, theories, and asserted jurisdictional grounds as to render moot the motions earlier filed.

a DOE contracting officer, in his affidavit submitted with the United States' motion to dismiss [doc. 12, attachment at 2]:

> The property over which South Central Bell claims ownership was provided pursuant to the 1977 agreement. Therefore, the issue of who owns the property necessarily relates to and is controlled by the contractual agreements between the parties. The dispute over ownership of the telecommunications facilities at issue arises under the contractual agreements between the parties, more specifically, the 1977 contract and its attachments.

In short, the court concludes that the plaintiffs' claims in this civil action are " 'essentially contractual' in nature." *RMI Titanium Company v. Westinghouse Electric Corporation,* 78 F.3d 1125, 1136 (6th Cir.1996), *quoting Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967 (D.C.Cir.1982).

If, as the United States contends, property which the plaintiff provided to or for the benefit of the United States pursuant to contract became property of the United States, then the conduct of DOE complained of cannot be the basis of any cause of action arising under the Constitution of the United States, or of any cause of action which would otherwise exist under State law and which might therefore be pursued against the United States under the Federal Tort Claims Act. If the United States' contention is correct, no liability under 18 U.S.C.A. § 1905 or under the laws pertaining to judicial review of agency action can attach to the United States' handling of the drawings and plats pertaining to the telecommunications system which, the United States insists, it bought.

Likewise, if the United States' contention is correct, U.S. West, Tel–Tec, and Energy Systems cannot have committed any actionable trespass, conversion, or tortious interference with contract in their conduct complained of. If the United States' view of its ownership of the property with which this civil action is concerned is the correct view in light of the contractual relationship among BellSouth, the United States, and Energy Systems, the plaintiff cannot be entitled to any injunctive relief against any of the individual defendants named in its complaint. The entire case rises or falls on the determination of an issue of property, and the only source to look to determine this issue is a series of written agreements.[5]

This being the case, the court concludes that the United States is correct in asserting that the court lacks jurisdiction of the subject matter of the plaintiff's claims for relief against the United States. The plaintiff's exclusive remedy against the United States in this case lies in the Contract Disputes Act of 1978, as amended, 41 U.S.C.A. ch. 9, *see* 41 U.S.C.A. § 602(a), and the plaintiff must therefore comply with the language in the 1977 contract quoted above concerning submission of its dispute to a contracting officer. 41 U.S.C.A. § 605(a). Assuming an adverse decision by the contracting officer and an election not to proceed before the Energy Board of Contract Appeals, *see* 41 U.S.C.A. §§ 606 and 609(a)(1), the sole proper forum for judicial consideration of this dispute will be the Court of Federal Claims. 41 U.S.C.A. § 609(a)(1); the Tucker Act, as amended, 28 U.S.C.A. § 1491(a)(1) and (2).

The jurisdiction of this district court provided by the "Little Tucker Act," 28 U.S.C.A. § 1346(a)(2), is not available in this case in light of the amount of the plaintiff's claim for money damages, obviously well in excess of $10,000.00, and also for the reason that the plaintiff's claim concerning the property in issue is subject to § 10(a)(1) of the Contract

---

5. In considering the issues of jurisdiction of the subject matter raised by the defendants, the court has properly gone beyond the pleadings to examine the evidentiary material submitted by the parties, including that submitted with the plaintiff's original complaint. *See RMI Titanium Company v. Westinghouse Electric Corporation,* 78 F.3d 1125, 1134–35 (6th Cir.1996), *citing,* inter alia, *Rogers v. Stratton Industries, Inc.,* 798 F.2d 913, 915–16 and 918 (6th Cir.1986); and *Mortensen v. First Federal Savings and Loan As-*sociation, 549 F.2d 884, 891 and n. 16 (3d Cir. 1977). The court finds that there is no dispute between the plaintiff and the defendants concerning the jurisdictional facts in this case, such as the existence and contents of the pertinent written agreements and of the pertinent correspondence among the parties. In deciding the jurisdictional issues presented, the court does not make any finding of fact concerning the merits of the plaintiff's substantive claims.

Disputes Act, 41 U.S.C.A. § 609(a)(1). Tucker Act jurisdiction in the Court of Federal Claims of claims and disputes arising under § 10(a)(1) of the Contract Disputes Act expressly includes jurisdiction of disputes concerning "rights in tangible or intangible property." 28 U.S.C.A. § 1491(a)(2).

 The decision of the Court of Appeals for the Sixth Circuit in *RMI Titanium, supra*, is authoritative with respect to the scope of the Contract Disputes Act, and with respect to any argument that BellSouth's status as a subcontractor, after the 1987 assignment and novation agreement, removes this case from the scope of the Contract Disputes Act. The decision in *RMI Titanium* did not depend on the fact that in that case, the subcontract was assigned back to DOE, and so this distinction between *RMI Titanium* and the case at bar does not permit this court to distinguish *RMI Titanium*. In the case at bar, there is a long history of direct contractual dealing between BellSouth and the United States; the 1977 contract, to which a finder of fact must look to determine the property issue presented, is between BellSouth and DOE's predecessor agency, ERDA. This contract expressly requires submission of a dispute to a contracting officer, followed by an appeal to the Administrator of ERDA.

In supplemental agreement no. 1 to the subcontract created by the assignment and novation, BellSouth "understood and agreed that this subcontract is entered into by [Energy Systems] *for and on behalf of the Government*." (Emphasis added.) The parties further agreed that Energy Systems would make payments to BellSouth "from Government funds advanced and agreed to be advanced to it by DOE, and not from its own assets." The parties also agreed in supplemental agreement no. 1 that Energy Systems would "administer this subcontract in other respects for DOE," and that Energy Systems reserved the right to transfer administration of the subcontract to DOE or DOE's designee.

Furthermore, in this civil action, while studiously avoiding any reference to the Contract Disputes Act, the plaintiff has sought relief directly against the United States and against two named officers or employees of DOE. The plaintiff's theories of a taking and inverse condemnation, and of misappropriation of what is claimed to be confidential and proprietary information in the copies of drawings and plats delivered by BellSouth to DOE, indicate by necessary implication that while the plaintiff contends that it owns the property which is the subject of this dispute, it does not contend that the principal contractor, Energy Systems, as opposed to the United States, has claimed or asserted any interest in this property.

For these reasons, *RMI Titanium, supra*, is dispositive. As Energy Systems points out, the Energy Board of Contract Appeals has, in a similar case, rejected a prime contractor's argument that a subcontractor could not, because of lack of privity, bring a Contract Disputes Act claim directly against DOE, concluding instead that the subcontractor was a contractor for the purposes of the act because the prime contractor was in fact acting as a purchasing agent of the United States Government. *Appeal of Detroit Testing Laboratory, Inc.*, 83–1 BCA (CCH) para. 16,458 at 81,863 (March 7, 1983). *See also United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed.Cir.1983), *cited in RMI Titanium, supra*, 78 F.3d at 1139–42, discussing the "express agency" and "otherwise in privity" exceptions to the prohibition against a direct Contract Disputes Act claim by a subcontractor against the United States. For the reasons stated, the court concludes that BellSouth is in this case a contractor for the purposes of the Contract Disputes Act [6], and that its claims so relate to its contract with the United States as to render the Contract Disputes Act the sole waiver of sovereign

---

6. In fact, the terms and conditions to the April 1, 1990, subcontract between Energy Systems and BellSouth [doc. 19, ex. E], which counsel for the United States handed up at oral argument, state plainly that by reason of Energy System's entering into the subcontract "as agent for the Government, [BellSouth] is considered a 'Contractor' within the meaning of Section 2(4) of the Contract Disputes Act of 1978 . . ., and this subcontract is subject to such act." In the disputes paragraph of the terms and conditions in which this statement appears, a claims procedure is specified in some detail.

immunity applicable in this case, and so as to render the Tucker Act the sole basis of jurisdiction of the subject matter in this case. BellSouth having chosen to proceed directly against the United States, the court will not allow the plaintiff by artful pleading to dodge the applicability of the Contract Disputes Act and the Tucker Act.

■ The authorities cited by the plaintiff are inapposite. The plaintiffs in *Love v. United States*, 915 F.2d 1242 (9th Cir.1989), had a claim for conversion under the Federal Tort Claims Act because the Farmers Home Administration had allegedly failed to comply with an applicable injunction in liquidating certain collateral, and had allegedly liquidated collateral in which the United States did not have a security interest, conduct which, if committed by a private secured party, would have created a cause of action for conversion under the applicable State law. The contractual relationship between the Farmers Home Administration as secured lender and the plaintiffs as debtors had nothing to do with the creation of the plaintiffs' property which was the collateral. *Ohio Student Loan Commission v. Cavazos*, 900 F.2d 894 (6th Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct. 245, 112 L.Ed.2d 203 (1990), was indeed an action brought in part under the Fifth Amendment prohibition against the taking of private property without just compensation, but it was a unique taking case in which the issue of jurisdiction was not governed by the Tucker Act because the plaintiff, a State agency, sought declaratory and injunctive relief only, not monetary damages.[7] The Tucker Act aside, the United States has not waived its sovereign immunity from suits for alleged violations of constitutional rights. *Nuclear Transport & Storage, Inc. v. United States*, 890 F.2d 1348, 1351–52 (6th Cir.1989), *cert. denied*, 494 U.S. 1079, 110 S.Ct. 1807, 108 L.Ed.2d 938 (1990).

Even if the court found in this civil action a claim cognizable under the Federal Tort Claims Act, the court would be compelled to dismiss it for the plaintiff's failure to comply with the required administrative claim procedure, a jurisdictional prerequisite. 28 U.S.C.A. § 2675(a); *Industrial Constructors Corporation v. United States Bureau of Reclamation*, 15 F.3d 963, 967–68 (10th Cir. 1994). BellSouth's pleaded allegation of futility with respect to the administrative claim requirement [doc. 47 at 14] is conclusory, and insufficient to excuse it from this requirement.[8] "Any claim arising out of... interference with contract rights" is expressly excluded from the scope of the Federal Tort Claims Act. 28 U.S.C.A. § 2680(h).

BellSouth argues that it is absolved from complying with the Tucker Act in this case because of its need for immediate, injunctive relief, a position belied by the facts that it has yet to file a motion for such relief under Fed.R.Civ.P. 65, and that in its amended complaint [doc. 47 at 17], this plaintiff continues to pray for damages in the millions of dollars for the unconstitutional taking of property alleged by it. In a Contract Disputes Act case, the Court of Federal claims has jurisdiction to render judgment upon a dispute concerning rights in tangible and intangible property, "and other nonmonetary

---

7. Generally, the Court of Federal Claims, not a district court, is the proper forum for claims for takings in violation of the constitutional provision. "[T]aking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act." *Preseault v. Interstate Commerce Commission*, 494 U.S. 1, 11, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990), *quoting Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (other citations omitted). Therefore, even if this court read BellSouth's claim not as one essentially governed by the Contract Disputes Act, but instead as one in which the claim for money damages for the asserted violation of U.S. CONST. Amend. V, is predominant, 28 U.S.C.A. § 1491(a) would pro-

vide for jurisdiction in the Court of Federal Claims, not this court.

8. At oral argument, counsel for BellSouth conceded that no administrative claim had been presented in this case. Counsel's argument that one who has suffered loss due to a taking by an agency of the federal government is excused from presenting an administrative claim to the taking agency because to do so would be futile not only would create an exception capable of swallowing the rule, but ignores the fact that the Federal Tort Claims Act, because it imposes tort liability on the United States "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C.A. § 2674, provides no remedy for a taking.

disputes on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C.A. § 1491(a)(2).

■ BellSouth contends that this court has jurisdiction under 28 U.S.C.A. § 1331 in this case to consider the plaintiff's claim under the APA for relief with respect to the alleged violation of the Trade Secrets Act. The plaintiff's citation to 42 U.S.C.A. 7192, which provides for judicial review by a district court of agency action undertaken by DOE, apparently rests on the same theory, in the absence of any pleaded allegation of specific agency action submitted for review.[9] Close examination of authority on which the plaintiff relies, *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C.Cir.1982) (assuming that the *Megapulse* decision continues to be authoritative, *see RMI Titanium, supra*, 78 F.3d at 1137–38), illustrates why the case at bar is a Contract Disputes Act action, not a suit for relief under the APA.

In *Megapulse*, the government contractor sought to enjoin disclosure of allegedly proprietary data developed before the contractor entered into a contract with the United States Coast Guard. 672 F.2d at 961 n. 1 and 961–63. The contractor did not claim any breach of contract, and limited its request for relief, which was entirely nonmonetary, to six documents which reflected technology asserted to have been developed before the contractor's first contract with the Coast Guard. *Id.* at 969. In the case at bar, in contrast, not only did none of the property which is the subject of this dispute antedate any government contract, but this property came into being solely because of the existence of a government contract and BellSouth's performance of it. For this reason, BellSouth cannot deny that it has a "claim against the United States founded... upon [an] express or implied contract with the United States" within the meaning of 28 U.S.C.A. § 1491(a)(1).

*Dowty Decoto, Inc. v. Department of the Navy*, 883 F.2d 774 (9th Cir.1989); and *Conax Florida Corporation v. United States*, 625 F.Supp. 1324 (D.D.C.1985), *injunction vacated and summary judgment awarded to defendants*, 641 F.Supp. 408 (D.D.C.1986), *affirmed*, 824 F.2d 1124 (D.C.Cir.1987), on which the plaintiff relies, are distinguishable from the case at bar for the same reasons as *Megapulse, supra*, is distinguishable. In both cases, government contractors sought injunctive relief under the APA in response to announced agency decisions to remove restrictive legends from data and drawings previously supplied and to disclose such data to third parties. Neither case involved a dispute concerning the ownership of other property to which the data and drawings related and which was created pursuant to a government contract.

The APA, in 5 U.S.C.A. § 702, provides only for "[a]n action in a court of the United States seeking relief other than money damages," and states in a proviso,

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

In *Nuclear Transport & Storage, Inc., supra*, 890 F.2d at 1353, the court refused to allow a plaintiff, by characterizing its claim as one for violation of the Atomic Energy Act, as opposed to one for an unconstitutional taking, to proceed under the APA: "Plaintiff's constitutional claim for the denial of due process stripped of the alleged violations of the statute is properly characterized as an unconstitutional taking under the Fifth Amendment, a claim which is properly brought in the Court of Claims, not in this court."

The fact that BellSouth is not entitled to proceed under the APA in this case does not deprive the plaintiff of a remedy under the Trade Secrets Act if the Court of Federal Claims rules in the plaintiff's favor on the property issue presented. In 28 U.S.C.A. § 1491(a)(2), the Court of Federal Claims,

---

**9.** The plaintiff states in summary fashion in its amended complaint [doc. 47 at 3], "Jurisdiction is further before this Court pursuant to 42 USC § 7192 as a result of the actions of the DOE. The conduct of the Defendant DOE exceeds its statutory, *contractual* and constitutional authority and the primary relief sought is equitable relief." (Emphasis added.)

"[t]o provide an entire remedy and to complete the relief afforded by [its] judgment," is authorized to "remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."

The plaintiff cites *C.H. Sanders Co., Inc. v. BHAP Housing Development Fund Company, Inc.,* 903 F.2d 114, 119 (2d Cir.1990), for its holding "that an action [against an agency of the United States] (regardless of the amount sought) may be commenced under § 1331 in the district court provided there is an independent waiver of sovereign immunity outside the Tucker Act." The portion of this holding beginning with the word "provided" is the reason why, however, the court must dismiss BellSouth's claims against the United States in this civil action. "[A]n action against the sovereign is properly before the district court only if there was both a grant of subject matter jurisdiction and a valid waiver of sovereign immunity." *Id.* at 117 (citations omitted). The United States has sovereign immunity from suit except as it consents to be sued, and the terms of any such consent to be sued in a court define that court's jurisdiction of the subject matter of any such suit. *Megapulse, supra,* 672 F.2d at 964 n. 18, *quoting United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The court has given careful consideration to each of the plaintiff's stated theories as to why it believes it is entitled to proceed against the United States in this court in this case, and has found each of these theories deficient for the reasons stated above. General federal question jurisdiction, standing alone, does not permit the plaintiff to proceed against the United States in this forum, because 28 U.S.C.A. § 1331 is not a waiver of sovereign immunity.

The court can dispose of the plaintiff's other jurisdictional assertions quickly. The Declaratory Judgment Act does not create federal subject-matter jurisdiction; it merely provides "discretionary ancillary relief." *Michigan Savings and Loan League v. Francis,* 683 F.2d 957, 960 (6th Cir.1982) (citations omitted). *See also id.* n. 7. The supplemental jurisdiction statute, 28 U.S.C.A. § 1367(a), provides no basis for the exercise of jurisdiction of any claim against the United States in this case, for the reason that, as the court has stated at some length above, there are no claims against the United States in this civil action within this court's original jurisdiction.

For these reasons, the court will dismiss the plaintiff's claims against the United States in this civil action for lack of jurisdiction of the subject matter. At oral argument, counsel for BellSouth indicated that the defendants Hall and Hinton are sued in their capacities as DOE officers or employees only, and conceded that a suit against an officer of the United States in his or her official capacity is a suit against the United States. Because the court is without jurisdiction to grant any relief to the plaintiff against the United States, it must dismiss the plaintiff's claims against these individual defendants, too. Dismissal of the plaintiff's claims against Hall and Hinton is further justified by the fact that after filing two complaints in this civil action, BellSouth has not identified wrongful conduct on the part of either individual, thereby failing to state against either a claim upon which relief can be granted.

Turning to BellSouth's claims against the defendants Energy Systems and Hatfield, U.S. West, and Tel–Tec, the plaintiff states accurately that this court has jurisdiction of these claims by reason of diversity of citizenship, 28 U.S.C.A. § 1332, except that the plaintiff did not allege the citizenship of the defendant Hatfield, and did not allege a matter in controversy concerning this individual defendant which exceeds the sum or value of $50,000.00. In fact, BellSouth does not state in its amended complaint any cause of action against Hatfield upon which relief can be granted, and appears to have named Hatfield as a defendant for the sole purpose of obtaining injunctive relief binding on him. Regardless of the existence of diversity jurisdiction, however, the court finds it appropriate in this instance to dismiss without prejudice the plaintiff's claims in this civil action against these nongovernmental defendants. Any cause of action which BellSouth might have for conversion, trespass, or tortious in-

terference with contract depends entirely on a determination that BellSouth has a property interest in some or all of the property which is a subject of this dispute. As the court has indicated, this determination must be made by the Court of Federal Claims, not this court. Dismissing without prejudice the plaintiff's claims against these defendants will preserve the plaintiff's rights against these defendants if BellSouth is ultimately successful in the correct forum, and will prevent the arising of any obstacle to relief in that forum by reason of 28 U.S.C.A. § 1500.[10]

For the reasons stated, the court will enter an order in accordance with this memorandum opinion, dismissing this civil action.

### ORDER

For the reasons stated in the court's memorandum opinion filed with this order, the court finds the motion to dismiss filed by the defendants United States, James C. Hall, and Connie Hinton [doc. 18] well taken, and it is **GRANTED**. It is **ORDERED** that the plaintiff's claims against these defendants in this civil action are **DISMISSED** for lack of jurisdiction of the subject matter.

The court finds the motions to dismiss or for a stay of proceedings filed by the defendants U.S. West Communications Federal Services, Inc., and Tel–Tec, Inc. [docs. 20 and 24] well taken in part, and these motions are **GRANTED IN PART.** It is **ORDERED** that the plaintiff's claims against these defendants in this civil action are **DISMISSED** without prejudice. The court finds the motions to dismiss filed by the defendants Lockheed Martin Energy Systems, Inc., and J.W. Hatfield [docs. 29 and 50] well taken, and it is **GRANTED.** It is **ORDERED** that the plaintiff's claims against these defendants in this civil action are **DISMISSED** without prejudice. In addition, it is **ORDERED** that the plaintiff's claim against the defendant J.W. Hatfield in this civil action is **DIS-**

MISSED without prejudice for failure to state a claim upon which relief can be granted.

---

10. Because dismissal without prejudice of the plaintiff's claim against the defendant Hatfield is appropriate both under Fed.R.Civ.P. 12(b)(6) and to allow the plaintiff to proceed against the United States in the proper forum, it is unnecessary to address the factual issue raised by Hatfield's uncontroverted affidavit [doc. 30, attachment], in which this defendant denies that he has ever served as Energy Systems' contract administrator with respect to the subcontract created by the novation and assignment among BellSouth, DOE, and Energy Systems, as opposed to the later (April 1, 1990) subcontract between BellSouth and Energy Systems for ESSX telecommunications services.